JOHN MAGWIRE, Plaintiff, *v.* MARY L. TYLER *et al.*, Defendants.

47 115
87a 493

1. *Ejectment — Judiciary act — Magwire v. Tyler — What points properly decided by Supreme Court.* — Under section 25 of the judiciary act, the Supreme Court of the United States is confined to questions arising under laws of the United States, and can not consider any distinct equity arising out of contracts or transactions between parties. And the only thing which that court could decide in the case of Magwire v. Tyler was the validity of the respective confirmations to Brazeau and Labeaume.

   Under the decision of the Supreme Court in that case (8 Wall. 650) the legal title vested in plaintiff, and under that ruling his proper remedy was ejectment. But suit was brought by bill in equity, and should be dismissed.

2. *Equity — Ejectment — Bill to set aside deed and vacate title can not be united with suit for possession.* — In a bill to set aside a deed as fraudulent, the plaintiff can not sue for the recovery of the possession of the land; and proceedings instituted for the purpose of vacating title, vesting it in plaintiff, and to eject defendant and obtain possession, are fatally erroneous on writ of error or appeal, and can not be sustained. When the decree is entered establishing plaintiff's title, he must then pursue his remedy in ejectment for the possession. The defendant has a right to have a jury to pass upon the question of rents and profits and upon other questions which may arise in that form of action.

3. *Equity — Statute changes only form of action — Court will not interfere in an action strictly equitable.* — Although, under the statute (Wagn. Stat. 999, § 1), legal and equitable cases are to a certain degree blended as to form, the principles remain the same, and the court will not interfere and exert its equity powers in a strictly legal action. The innovation extends only to the form of action in the pleadings. The party need only state his cause of action in ordinary and concise language, whether it be in assumpsit, trover, trespass, or ejectment, without regard to ancient forms; but the distinction between the actions remains the same.

   To entitle plaintiff to an equitable interference of the court, he must show a proper case for the interference of a court of chancery, and one in which he has no adequate and complete relief at law.

## On Motion to Affirm Judgment of Common Pleas Court.

This is a motion to affirm the judgment of the Common Pleas rendered at the March term, 1865. From that judgment an appeal was taken to this court, and at the March term, 1867 (40 Mo. 406), said judgment was reversed and Magwire's petition dismissed. The judgment of this court was reversed in the Supreme Court of the United States, at the December term, 1868, and was again argued there on a motion to reform the

judgment, December term, 1869. The Supreme Court of the United States rendered two opinions, which will be found in 8 Wall. 650.

For statement of case see opinion of the court. As to the facts at large touching the case, see 40 Mo. 407

*S. T. Glover*, for plaintiff on motion.

I. Defendants claim that the only remedy Magwire has is in a court of law, and that this suit must now be dismissed and ejectment instituted to recover the land. It is not claimed that defendants have been deprived of any right, but a mere form is demanded at the end of a litigation by which the rights of the parties have been settled. Our code of practice will not countenance such an objection. The plaintiff is required to file a petition showing his cause of action; the defendant answers it. There is no bill in equity or other formal pleading under our code. Justice is administered without forms. (R. C. 1855, p. 1229, § 3; Cobb v. West, 4 Duer, 38; Parsons v. Sydam, 3 E. D. Smith, 276; Haight v. Child, 34 Barb. 186; Scott v. Pilkington, 15 Abb. 280; Robinson v. Rice, 20 Mo. 229; Butterworth v. O'Brien, 24 How. Pr. 438; Charless v. Rankin, 19 Mo. 490; Winterden v. Eighth Av. R.R., 2 Hilt. 389; Patrick v. Abeles, 27 Mo. 184; 19 How. Pr. 94; Durant v. Gardner, 15 Abb. Pr. 445; Marquat v. Marquat, 2 Kern. 336; Egert v. Wicker, 10 How. Pr. 193; Cotheal v. Tallmadge, 1 E. D. Smith, 579; Chapman v. Carolin, 3 Bosw. 456; Depeyster v. Wheeler, 1 Sandf. 719; Harmony v. Bingham, 1 Duer, 210; Hart v. Hudson, 6 Duer, 294; Relyer v. Beaver, 34 Barb. 547; 36 Barb. 29; 39 Mo. 471.) There is no such defense in this record as that plaintiff should seek his remedy at law, and this appears from the assignment of errors. The defendants deny plaintiff's right, and submit themselves to the judgment of the court. That waives such a plea, even supposing the forms of equity pleading to still prevail. (Underhill v. Van Courtlandt, 2 Johns. Ch. 369; Ludlow v. Simond, 2 Caines' Cas. 40; 4 Johns. Ch. 290; Grandin v. Leroy, 2 Paige, 509; Hawley v. Cramer, 4 Cow. 727; Leroy v. Pratt, 4 Paige, 81; Burroughs v. McNeil, 2 Dev. & Bat. Eq.

300; Cable v. Martin, 1 How., Miss., 561; Holmes v. Doll, 1 Clark, 75; Osgood v. Brown, 1 Freem. Ch. 392; Miller v. Furse, 1 Bailey's Eq. 187; Strother v. Lucas, 6 Pet. 769; Mary v. Goodwin, 27 Ga. 353; Fowler v. Halbert, 3 Bibb, 384; Supervisors, etc., v. Utica, etc., 1 Barb. 432; Reed v. Wessell, 7 Mich. 139; Viburt v. Frost, 3 Abb. Pr. 119; 6 Abb. Pr. 6; Bank, etc., v. Utica, etc., 4 Paige, 400.)

II. It is said the court of chancery has no power to put plaintiff in possession, and hence he can have no relief on his bill. This court has intimated such a doctrine. (Peyton v. Rose, 41 Mo. 257.) But there never was the least authority for it either in England or America. (Huguenin v. Basely, 15 Ves. 180; Brown v. Cuffe, 1 Hogan, 145; Dove v. Dove, 2 Dick. 617; 1 Smith's Ch. Pr. 428; 2 Hoffm. Ch. Pr. 95; 1 Barb. Ch. 441; Boynton v. Jackwals, 10 Paige, 307; Devaucene v. Devaucene, 1 Edw. Eq. 272; Ludlow v. Lansing, 1 Hopk. 232; Garretson v. Cole, 1 Har. & Johns. 370; Buffermon's Case, 13 N. H. 14; Valentine v. Teller, 1 Hopk. 422; Irvine v. McKee, 5 Humph. 554; Mead v. Campfield, 3 Stockt., N. J., 38; McCord v. McClintock, 5 Lit. 234; Costerman v. Combs, 7 B. Monr. 277; Kane v. Pelcher, id. 653; 1 How. Rul. Eq. 9, 10.) The code of practice of Missouri, in terms, confers power on the courts in all cases to put a plaintiff in possession of property adjudged to him. (Gen. Stat. 1865, p. 683, § 28.)

III. The plaintiff's petition sets forth equitable grounds of relief, and they are sustained by the proofs. These grounds are fraud, mistake, cloud on plaintiff's title, errors of law and fact committed by Land Office Department to the injury and oppression of plaintiff. The opinion of the Supreme Court of the United States finds the allegations true. There is a clear jurisdiction in such cases in equity. (Brook v. Corneal, 5 Lit. 164; Burt v. Cassety, 12 Ala. 734; Williams v. Flight, 5 Beav. 41; Ryan v. Macmath, 3 Brown's Ch. 16; Ward v. Ward, 2 Hay, 226; Hamilton v. Cummings, 1 Johns. Ch. 517; Leigh v. Everhart, 4 Mon. 380; Field v. Leabury, 11 Ala. 309; Swazy v. Burke, 12 Pet. 14; Cox v. Izard, 7 Wall. 561; Hughes v. United States, 4 Wall. 236; Hughes v. United States, 11 How. 567; Garland v. Wynn, 20

How. 6; Cunningham v. Ashley, 14 How. 377; Lindsey v. Hays, 2 Black, 557; Minnesota v. Batchelder, 1 Wall. 115; Lytle v. Arkansas, 22 How. 193; Fleming v. Slocum, 18 Johns. 403; Smith v. McIvor, 9 Wheat. 532; How v. Harwood, 14 Ves. 28; Lisle v. Lysle, 1 Ves. 535; 17 Ves. 111; Sampson v. Lord Houdon, 3 Myl. & Cr. 97; Vandover v. Mayor, etc., 9 Paige, 388; Cox v. Clift, 2 Comst. 118; Persol v. Elliot, 2 Pet. 95; Hamilton v. Cumming, 1 Johns. Ch. 520; Pettit v. Shepherd, 5 Paige, 493; Heywood v. City, etc., 14 N. Y. 522-9.) Anything is a cloud which is used to fix a suspicion or doubt on plaintiff's title. The opinion of this court as to the effect of Labeaume's patent, survey, and deeds, on the plaintiff's rights, is conclusive as to the allegations of cloud. (Merritt v. Mayor, etc., 8 Paige, 198; Gladden v. White, 5 How., Miss., 80; Kennedy v. Kennedy, 2 Ala. 571.)

*J. M. Krum*, for plaintiff on motion.

I. As the law gave jurisdiction and power to the Supreme Court of the United States to hear and determine the questions involved in the construction of acts of Congress — surveys, patents, etc.— that court had *implied* authority to pass upon all incidental questions that were necessary to be determined in order to render a judgment in the cause. It involves a judicial as well as a legal absurdity to say that the court had jurisdiction but had no power to render judgment in the cause. (See Fairfax v. Hunter's Lessees, 1 Wheat. 304.)

II. As the law, either expressly or by necessary implication, gave authority to the Supreme Court of the United States to hear and determine the questions involved in this record, and that court has done so, there is no question open for the decision of this court. Nothing remains to be done but to carry into effect the decision of that court in conformity with its mandate. The identical questions now raised and discussed by appellants were discussed before the Supreme Court of the United States. (Counsel here cited from opinion of Judge Clifford in Magwire v. Tyler, 8 Wall. 650, and Furman *et al.* v. Nichol, error to the Supreme Court of Tennessee, not yet reported.)

III. Several of the questions now urged upon the consideration of this court were not raised, and no point was made upon them in the trial of the cause in the court below. It is now too late to raise or discuss these questions. The points are: 1. That the action should have been ejectment pure and simple, and not by bill in equity. 2. That the respondent's claim is champertous. 3. That the Court of Common Pleas had not jurisdiction of the cause. 4. That the plaintiff is estopped by ancient boundaries, etc. These objections do not appear in the record, and were not made in the trial of the cause in the Court of Common Pleas. The law is well settled in Missouri that this court will consider and *only* consider such questions as were raised in the court below and preserved in the record.

*P. Phillips*, for defendants on motion.

I. The Supreme Court of the United States has no more power to reverse the Supreme Court of this State on a local question than the latter has to reverse a decision of the former on a federal question. Now, while the court at Washington assumed jurisdiction on the hypothesis that no other than a federal question caused the decree here, as a matter of fact this is not true. The decree, which is the mere legal conclusion of the opinion, was based upon several matters of purely local jurisdiction.

The mandate of the Supreme Court, in the case at bar, is entitled, not to a blind submission, but to intelligent acquiescence. Its meaning is to be ascertained by a careful examination of the facts in the case, and the application of the opinion to those facts. (Davis v. Packard, 8 Pet. 323 ; Mitchell v. The United States, 15 Pet. 84.)

II. A bill in equity is not plaintiff's proper remedy, as there is an adequate one at law. (Payton v. Oliver, 41 Mo. 259 ; Curd v. Lackland, 43 Mo. 139 ; Dewill v. Haess, 2 Cal. 463 ; Woodruff v. Fisher, 17 Barb. 232.)

*B. A. Hill*, for defendants on motion.

I. The United States Supreme Court having assumed jurisdiction of this case on writ of error, under the twenty-fifth section

of the judiciary act, on the ground that this court held the confirmation of the commissioners to Brazeau of 1810 to be void, that question, or some other one immediately respecting the validity or construction of an act of Congress of the United States, under which the said confirmation was made, and on which plaintiff's title immediately and exclusively depends, are the only questions of which the United States Court could take jurisdiction and render a decision that would be binding on this court. (Conkling's Treat. 1–4, 12–19, 23–47, 4th ed.; Curtis' Com. 274–391, and cases cited. See also Matthews v. Zane, 7 Wheat. 164; 5 Curtis, 244; Armstrong v. Treasurer of Athens County, 16 Pet. 281; Crowell v. Randell, 10 Pet. 368; Williams v. Norris, 2 Wheat. 363; Harris v. Dennie, 3 Pet. 292; Satterlee v. Matthewson, 2 Pet. 380; Hickie v. Starke, 1 Pet. 94; Craig v. Missouri, 4 Pet. 410; Mills v. Brown, 16 Pet. 525; Lawler v. Walker, 14 How. 149; Neilson v. Lagow, 12 How. 98; Smith v. Hunter, 7 How. 738; Williams v. Oliver, 12 How. 111, 125; Erwin v. Lowry, 7 How. 172; Bank of Ohio v. Knoop, 16 How. 369; Ross v. Barland, 1 Pet. 655, 664; Ocean Ins. Co. v. Polleys, 13 Pet. 157; Almonester v. Kenton, 9 How. 1; Doe v. The City of Mobile, 9 How. 451; Henderson v. Tennessee, 10 How. 311; Wiscart v. Dauchy, 3 Dallas, 321; Darousseau v. The United States, 6 Cranch, 307; The Victory, 6 Wall. 382; Hamilton Co. v. Massachusetts, id. 632; Rector v. Ashley, id. 142; Walker v. Villarago, id. 124; Barney v. Baltimore City, id. 280; Grison v. McDowell, id. 363; Railroad Co. v. Rock, 4 Wall. 177; Ryan v. Thomas, id. 603; Lanfear v. Hunley, id. 209; McDonough v. Millardon, 3 How. 707; Doe v. Eslava, 9 How. 440; Semple v. Hagar, 4 Wall. 431; Witherspoon v. Duncan, id. 210; State of Minnesota v. Batchelder, 1 Wall. 109; Bridge Proprietors v. Hoboken Co., id. 116; Silliman v. Hudson River Bridge Co., 1 Black, 582; Farmer's Heirs v. Mobile, 9 How. 451; Berthold v. McDonald, 22 How. 334; Calcote v. Stanton, 18 How. 243; Mackey v. Dillon, 4 How. 420; Moreland v. Page, 20 How. 522; Martin v. Hunter's Lessees, 1 Wheat. 348–9; Smith v. State of Maryland, 6 Cranch, 286; Kennedy's Ex'rs v. Hunt's Lessee, 7 How. 586: Keene v. Clark, 10 Pet.

291 ; Coon v. Gallagher, 15 Pet. 18 ; Grand Gulf R.R. Co. v. Marshall, 12 How. 165 ; Adams v. Preston, 22 How. 488 ; Medbury v. The State of Ohio, 24 How. 413 ; Miller v. Nichols, 4 Wheat. 315 ; Wilson v. The Blackbird Creek Marsh Co., 2 Pet. 249 ; Owings v. Norwood's Lessee, 5 Cranch, 344 ; The President, etc., of Commercial Bank of Cincinnati v. Buckingham's Ex'rs, 5 How. 317 ; McKinney v. Carroll, 12 Pet. 66 ; Curtis' Com., § 224 ; Marbury v. Madison, 1 Cranch, 137 ; Maxwell v. Newbold, 18 How. 511 ; Crowell v. Randall, 10 Pet. 368.) The extent of power conferred by the constitution on the Supreme Court over land cases is " to all cases in law and equity arising under the laws of the United States," etc. (Art. III, § 2.) Under the act of Congress of 1789 the only question to be decided in this case by that court was whether the confirmation to Brazeau was void or valid. If valid, then it vested the title in him, on the 22d of September, 1810, for the four arpents of land within Soulard's survey for Labeaume.

Both parties claimed under the same confirmation, and the original question was as to the true boundaries of the lands confirmed to each party. This was a question of fact to be determined by the State court having original jurisdiction. In every case, except this one of Madame Tyler's, the Supreme Court has uniformly held that it had no jurisdiction over questions of boundary between parties claiming under entries, pre-emptions, confirmations, or patents. (McDonough v. Millandon, 3 How. 693 ; Mackey v. Dillon, 4 How. 420 ; Almonester v. Kenton, 9 How. 1 ; Farmer's Heirs v. Mobile, id. 451 ; Doe v. Eslava, id. 421 ; Moreland v. Page, 20 How. 522 ; Kennedy v. Hunt, 7 How. 593 ; Lanfear v. Hunley, 4 Wall. 204 ; see also 9 How. 1, 9 ; 9 Pet. 224, 236 ; Ross v. Barland, 1 Pet. 664 ; Minnesota v. Batchelder, 1 Wall. 109 ; Berthold v. McDonald, 22 How. 334 ; Calcote v. Stanton, 18 How. 243 ; 3 Wheat. 246 ; Ewing v. Lowry, 7 How. 172.) It is a singular fact that that court has twice held in favor of defendants' theory of location, in West v. Cochran, 17 How. 413–15, and Magwire v. Tyler, 1 Black, 198–9.

Such defenses under local laws are not re-examinable in the

Supreme Court, where jurisdiction could not be assumed, and where any judgment or decision thereon would be *coram non judice.* (See cases above cited, and particularly Matthews v. Zane, 7 Wheat. 164; Erwin v. Lowry, 7 How. 172; Lytle v. Arkansas, 22 How. 203–4.; Ross v. Barland, *supra.*)

II. There is no equity in the plaintiff's bill. The State court is bound to dismiss the bill for this reason alone. The opinion of the court in this case virtually admits this by declaring that the Labeaume patent did not convey the 4 x 4 arpents in the southeast corner to Labeaume, and that the new patent of 1862 to Brazeau did convey that identical land, and vest in him the legal title. If this be so, then Brazeau acquired a legal title to the land sued for, by force of the new patent, and his remedy is strictly at law and not in equity.

The plaintiff's claim of prior equity under the Spanish grant is a mere political equity, of which a court of equity can take no cognizance. (Chouteau v. Eckert, 2 How. 371; LeBois v. Brammell, 4 How. 449, 461; Strother v. Lucas, 12 Pet. 410; Menard v. Massey, 8 How. 306; Barnard v. Ashley, 18 How. 44; Garland v. Wynn, 20 How. 6; United States v. Hughes, 11 How. 567; Carroll v. Stafford, 3 How. 441; West v. Cochran, 17 How. 412–13, 417; Mackey v. Dillon, 4 How. 400.) The title must be derived from the United States, and takes effect by relation to the date of the filing of the claim for confirmation; and the patent issued on the confirmation will relate to the filing of the claim, and pass the legal title as of the date of said claim. (Landes v. Brant, 10 How. 373; French v. Spencer, 21 How. 228; Ross v. Doe, *ex dem.* Borland, 1 Pet. 664; Beard v. Federy, 3 Wall. 478; Grezar v. McDowell, *id.* 380; Stark v. Storrs, 6 Wall. 402.) The equities alleged in plaintiff's bill do not concern any contracts, relations, privities, obligations, trusts, agencies, or any transaction or conduct whatever arising between the parties respecting any right, title, or property which had emanated from the United States, and in respect of which the plaintiff had acquired any prior or other equity. All equities existing in favor of either of the claimants under the former government, prior to the confirmations, are merged in the equity or justice of the claims, which

were finally decided by the action of the political power of the United States.

The distinction between proceedings at law and in equity, in the State courts of Missouri, is well established, and under the code of practice, jurisdiction of equity cases has never been taken except in accordance with the jurisprudence and forms of pleading in courts of chancery. There is no State in the Union where the distinction between the remedies on legal and equitable titles is more strictly observed than in the State of Missouri. Equity practice and pleading have been retained in Missouri in full force since the organization of the State. (Rector v. Price, 1 Mo. 373; Tesson v. Atlantic Mut. Ins. Co., 40 Mo. 33; Clarkson v. Curly, id. 114; Wade v. Beldmeyer, id. 486; 23 Mo. 50; Pawley v. Vogel, 43 Mo. 291; Rutherford v. Williams, id. 18; McIlvaine v. Smith, id. 45; 21 Mo. 331; Risher v. Rousch, 2 Mo. 95; 6 Mo. 16; 16 Mo. 457; 4 Mo. 384; 20 Mo. 222; State ex rel. Allen v. St. Louis Circuit Court, 41 Mo. 576; McKnight v. Bright, 2 Mo. 110; Lewis v. Lewis, 19 Mo. 182.)

*J. R. Shepley*, for defendants on motion.

I. The decision and judgment of the Supreme Court of the United States is that the plaintiff had a complete legal title to the land he sues for.

II. Plaintiff has no equities; and if at the time he brought his action, he had a complete legal title, then he must resort to his action of ejectment. The remedies, under the code equitable and legal, are just as distinct as ever. If a man has a state of case which entitles him to a relief in equity, he can not obtain it by stating a case for relief at law, nor *vice versa*. (Tesson v. Atlantic Mut. Ins Co., 40 Mo. 33; Peyton v. Rose, 41 Mo. 257; Wynn v. Cory, 43 Mo. 301; Pawley v. Vogel, 42 Mo. 303; Rutherford v. Williams, id. 25; see also Magwire v. Tyler, 40 Mo. 406.)

It need hardly be said that any equities prior to the confirmation can not be set up as a ground for equitable relief. This is a matter which addresses itself to the sovereign alone, and a court

of equity can take no cognizance of it. This is decided by every case where the effect of confirmations have been before the United States Supreme Court, from the case of Strother v. Lucas, 12 Pet. 410, down to the case of Garland v. Wynn, 20 How. 6.

III. The moment the U. S. Supreme Court reverses its former decisions, the function of the mandate is exhausted, and this court will take up the case anew; and, in applying the principles laid down in the decision of the Supreme Court of the United States, will determine what is the effect of those principles in reference to well-settled rules and decisions upon our local laws and remedies; and, in so determining, this court is supreme, and not subject to the supervision of any court.

It follows from the foregoing propositions that in carrying out the decision of the United States Supreme Court, this tribunal must declare that the plaintiff, at the time this suit was instituted, had a perfect title at law, ample to sustain ejectment; that he presents no case for equitable relief, and no equities to sustain any suit; that his bill in equity will have to be dismissed, and the plaintiff be remitted to his action at law.

IV. This whole judgment and decree, as it stands here now, is a nullity, the St. Louis Court of Common Pleas never having had any jurisdiction of the case.

V. Even if this court felt itself constrained to enter up judgment in this case divesting the title out of defendants and vesting it in the plaintiffs, yet, under the well-settled decisions in this State, it would give no judgment or decree either for possession or for mesne profits, but will remit the plaintiff to his action of ejectment. (Janney v. Spedden, 38 Mo. 395; Peyton v. Rose, 41 Mo. 257; Wynn v. Cory, 43 Mo. 301; Curd v. Lackland, *id.* 139.)

WAGNER, Judge, delivered the opinion of the court.

The former judgment of this court having been reversed in the Supreme Court of the United States, the plaintiff now files the mandate of that court, and moves that the judgment of this court be reversed, and that of the Common Pleas Court of St. Louis county be affirmed.

When the case was here before (40 Mo. 406) it was determined that the defendants possessed the legal title and had also the equities, and accordingly judgment was given in their favor.

On error to the Supreme Court of the United States, that court adjudged that the legal title to the premises in dispute was vested in the plaintiff; that Brazeau's confirmation, under which plaintiff holds, was valid; and that Labeaume's confirmation, whence the defendants claim to derive title, embraced no part of the land in controversy. (Magwire v. Tyler, 8 Wall. 650.)

If the decision in the Supreme Court of the United States be correct, the case has been tried throughout on a mistaken theory. The suit was instituted by bill in equity, and proceeded upon the ground that the prior legal title was in the defendants. The petition alleged that the plaintiff had the better equity, and that the land justly belonged to him; that the defendants and others, in combination and confederacy with them, procured a patent to be issued to them, and that the survey and patent were procured and issued by fraud, covin, and misrepresentation; that the defendants, previous to the acquisition of any interest or claim in the land, had notice of the interest or claim of the plaintiff; and that defendants' patent was a cloud on plaintiff's better title. The petition then prayed that the court, by its judgment and decree, would divest out of the defendants all the right, title, and interest acquired or claimed by them and each of them, from Louis Labeaume or any one claiming under him, and invest the same in the plaintiff and put him in possession thereof, and for an account, etc.

The answer denied these allegations, and claimed that defendants had the prior title and better equity. It also pleaded in bar a final decree in chancery in a former suit between the same parties, upon the same identical equities; alleged that defendants were innocent purchasers for a valuable consideration, and insisted that plaintiff's suit was barred by the great lapse of time.

The only question which it was competent for the Supreme Court of the United States to notice when the cause was removed there was the question of title arising out of the respective confirmations under which the parties claimed.

Everything else set up in the bill and answer was peculiarly and exclusively of local State jurisdiction, over which the national tribunal had no control, and concerning which an adjudication here is final.

In cases going from a State court to the United States Supreme Court, the jurisdiction of the latter court is limited and restricted by the twenty-fifth section of the judiciary act, and it can only proceed in accordance with the provisions of that section. The section directs that the decision of the highest court in a State may be reviewed when that decision was had upon a question arising under the constitution, statutes or treaties, or a commission held under the United States, and the decision is against the title, right, privilege or exemption specially set up or claimed by either party. But the further express provision is made that no error shall be assigned or regarded as a ground of reversal in any such case as aforesaid, other than such as appears on the face of the record, and immediately respects the before-mentioned questions of validity or construction of the said constitution, treaties, statutes, commission or authorities in dispute.

Under this statute the express ruling is that the court is confined to an examination of the questions arising under the laws of the United States, and can not consider any distinct equity arising out of contracts or transactions between the parties. (Matthews v. Zane, 7 Wheat. 164.) It follows, therefore, that the only thing which the national court did or could decide was the validity of the respective confirmations to Brazeau and Labeaume, under which the parties herein claim; and it was decided most conclusively and unequivocally that the Brazeau confirmation, under which the plaintiff's title accrued, was valid, and that the Labeaume confirmation, by virtue of which the defendants seek to derive title, did not embrace the land in dispute confirmed to Brazeau. In conformity with that decision, the legal title is vested in the plaintiff, and his remedy is the next question to be considered.

That ejectment is the proper and appropriate remedy, where a party has the title, to recover possession of real estate, is a principle too well established to require argument or the citation of

Magwire v. Tyler et al.

authorities.    A bill in equity is not the proper remedy to recover the possession of lands; and where there is an adequate and complete remedy at law, a court of equity will not interpose unless upon some matters coming under some peculiar head of concurrent equity jurisdiction.    (Janney v. Spedden, 38 Mo. 395.)

In those cases where it is permissible under the code to combine in the same proceeding or petition legal and equitable claims, the matter in equity and the action at law must be separately stated and must necessarily be separately tried.    Each count must be tried by itself, according to the prescribed mode in such actions and suits.    In an action at law there is a constitutional right of trial by jury, which has no existence in equity.    The courts in New York have held that an equitable cause of action to remove — as a cloud upon the plaintiff's title — a deed given by mistake by a third party to the defendants, *under which, having fraudulently obtained possession by connivance with the plaintiff's tenant*, he claims to hold as owner, and a claim to recover the possession of the premises may be united in the same action and asserted in the same complaint.    But it is also clearly held that where legal and equitable causes of action are united under the code, as to the former, on the trial of the causes, the issues must be submitted to a jury.    (Bradley v. Aldrich, 40 N. Y. 510; Lattice v. McCarty, 41 N. Y. 107.)

It has often been held in this court that in a bill to set aside a deed as fraudulent, the plaintiff can not sue for the recovery of the possession of the land, and that proceedings instituted for the purpose of vacating title, vesting it in the plaintiff, and to eject defendant and obtain possession, are fatally erroneous on writ of error or appeal, and can not be sustained.    When the decree is entered establishing plaintiff's title, he must then pursue his remedy in ejectment for the possession.    The defendant has a right to demand this.    He has a right to have a jury pass upon the question of rents and profits, and upon other questions which may arise in that form of action.

In like manner it has been held that a cause of action in ejectment can not be united with a cause of action for partition of the premises sued for.    (See Peyton v. Rose, 41 Mo. 257; Curd v.

Lackland, 43 Mo. 139 ; Young v. Coleman, *id.* 179 ; Gray v.
Payne, *id.* 203 ; Wynn v. Cory, *id.* 301 ; Jones v. Moore, 42
Mo. 413 ; Lambert v. Blumenthal, 26 Mo. 471 ; Gott v. Powell,
41 Mo. 416.)

It is a grave error — an entirely mistaken notion — to suppose
that all distinction between law and equity is abolished by our
code of procedure. The line of demarkation — the great and
essential principles which underlie the respective systems — is
inherent and exists in the very nature of things. Although legal
and equitable cases are to a certain degree blended as to form,
the principles remain the same, and the court will not interfere
and exert its equity powers in a strictly legal action.

This principle is almost daily acted upon in our courts, and has
been the uniform course of practice ever since the adoption of our
new system. In all the States where the code has been instituted,
the ruling has been harmonious in the same way. The statute
enacts that " there shall be in this State but one form of action
for the enforcement or protection of private rights and the
redress or prevention of private wrongs, which shall be denomi-
nated a ' civil action.' " (Wagn. Stat. 999, § 1 ; R. C. 1855,
p. 1216, § 1.)

In providing that there shall be but one form of civil action,
the Legislature can not be supposed to have intended at one stroke
or sweeping enactment to abolish the well-recognized and long-
established distinction between law and equity. Such a construc-
tion would lead to perplexities and difficulties, infinite and endless
in their character. The innovation extends only to the form of
action in the pleadings. While the difference in form and the
technicalities in pleadings have been dispensed with, and the party
need only state his cause of action in ordinary and concise
language, whether it be under assumpsit, trover, trespass, or
ejectment, without regard to the ancient forms ; still the distinc-
tion between these actions has not been destroyed, but remains
the same. So cases legal and equitable have not been consoli-
dated, although there is no difference between the form of the
bill in chancery and the common-law declaration under our
system, where all relief is sought in the same way from the same

tribunal.   The distinction between law and equity is as naked and as broad as ever.   To entitle the plaintiff to an equitable interposition of the court, he must show a proper case for the interference of a court of chancery, and one in which he has no adequate or complete relief at law.   The judgment vesting him with the legal title shows that he has a complete, appropriate and ample remedy at law by ejectment.   These plain principles were entirely overlooked at the trial in the Court of Common Pleas, but, as before remarked, according to the decision of the majority of the court, the case was instituted and tried upon a misapprehension.

In this view of the subject we consider it unnecessary and inappropriate to discuss or render an opinion upon certain questions which have been argued by counsel.   When the matters insisted upon are properly before this court they must be reviewed, but not till then.   Wherefore it results that so much of the motion as asks for an affirmance of the judgment of the Court of Common Pleas will be overruled, and, in accordance with the mandate, the judgment of this court will be reversed and the petition dismissed.   The other judges concur.