MARCUS D. L. HUNTER *et al.*, Plaintiffs in Error, *v.* JOHN HUNTER *et al.*, Defendants in Error.

50  445
31a  198
32a  262

50  445
100  20

50  445
105  62
105  478

50  445
115  513

50  445
d90a  660

50  445
92a  629

1. *Frauds — Trusts — Agency— Purchase by agent, for himself, of the property which was the subject of his agency. — Resulting trusts. —* A., residing in Missouri, and B., residing in Illinois, acted as agents for C., also residing in Illinois, in the management of lands in Missouri. A. and B., conspiring together and representing the land as worth but $20 per acre, obtained a deed from C. at that price, and soon afterwards sold the land for $50 per acre. *Held*, that as A. and B. stood in a confidential relation to C., being his agents for the sale of the land, it was their duty as such to act alone for his benefit; and in making the purchase themselves, at an under-value, they became trustees by implication, holding the title for C.

2. *Co-trustees, liability of. —* Trustees of constructive trusts are only bound for what they realize. They are not jointly bound unless the funds were received by both. Each must account for what comes into his hands.

3. *Limitations, statute of— Plea of bar by five years' limitation not a good plea of bar by ten. —* A plea of the statute of limitations which only sets up a bar by lapse of five years is not a good plea of a bar by ten years.

4. *Limitations — Frauds — Trusts — Equitable actions concerning trusts growing out of the realty. —* An action to establish a trust growing out of lands, or to recover the proceeds of a re-sale of lands held under a constructive resulting trust, ought to be governed by the same rule, as to length of time necessary to bar, as an action to set aside a fraudulent conveyance and recover possession of land. And such an action is covered by the last clause of section 2, article III, of the limitation act of 1855 (R. C. 1855, 1047, § 2), which includes, in the actions covered by the ten years' limitation, "actions for relief not herein otherwise provided for."

5. *Limitations — Fraud — Discovery. —* In case of fraud, the statute of limitations begins to run only from the discovery of the fraud. If a party is in possession of, or has notice of, the main facts constituting the fraud, the statute will begin to run from that time.

### Error to Buchanan Court of Common Pleas.

*T. A. Green*, for plaintiffs in error.

I. Trustees, agents, administrators, guardians, attorneys or others, whose connection with any other person is such as to establish a confidential relation between them concerning the property of such person, or to give them official knowledge and opportunities in regard to such property, cannot become the purchasers of such property, even though the sale be at public auction. (Thornton v. Irwin, 43 Mo. 153–168.) It makes no difference that the agent committed no actual fraud, or that no injury resulted to the

parties in interest; the law avoids the sale on the grounds of public policy. And where one acts gratuitously, in the relation of mere friendship or instrumentality, and is not clothed with the character and all the responsibilities of an agent, yet he cannot be permitted to avail himself of any information he may thus acquire, or of the confidence imposed in him, to commit a fraud on the friend he consents to serve. Fraud is odious in law, and will not be tolerated under the guise of friendship or gratuitous service. (McDonald v. Fithian *et al.*, 6 Ill. 269, 301.) Where influence is shown to have been unduly exercised, or confidence to have been reposed and abused, its source is immaterial; a man being as much bound to act for the best interest of another who has trusted him as a friend, as if he had been appointed trustee or agent. (Turner v. Turner, 44 Mo. 538; McCormick v. Malin, 5 Blackf. 509; 19 Mo. 325; Dillon's Adm'r v. Bates, 39 Mo. 292–301; Grumley v. Webb, 44 Mo. 444–455; Rubey v. Barnett, 12 Mo. 3, 8; Davoue v. Fanning, 2 Johns. Ch. 252–270; Gardner v. Ogden, 22 N. Y. 328; Michoud v. Girod, 4 How. 503–561.)

II. The statutes of limitations do not run against resulting or constructive trusts where actual fraud is imputed and proved, and where the trust is within the proper, peculiar and exclusive jurisdiction of courts of equity; and the issue is directly between the *cestui que trust* and the trustee. (Michoud v. Girod, 4 How. 560; McNew v. Booth, 42 Mo. 189; Davoue v. Fanning, 2 Johns. Ch. 269–270; Dillon's Adm'r v. Bates, 39 Mo. 292, 301; Rubey v. Barnett, 12 Mo. 3, 8.) In case of actual frauds, courts of equity give relief after a long lapse of time, and length of time ought not to bar relief. (Prevost v. Gratz, 6 Wheat. 481.) Where the fraud is merely constructive, lapse of time may operate.

The defendant sets up as a bar to this suit that part of section 10, Wagner's Statutes, p. 918, which provides " that an action for relief on the ground of fraud must be commenced within five years from the discovery of the facts constituting the fraud." This provision applies only to ordinary frauds, where there is no confidential or fiduciary relation, and can in no manner apply to trusts of any kind. This does not in any manner change the common equity.

doctrine, nor can a court of equity apply it in this case, as there is no analogy whatever to any suit at law.

There is no express statute of limitations which applies to this case (39 Mo. 301, *supra*), it having no analogy to a suit at law. When the statute fixes a bar to a legal remedy, a court of equity having concurrent jurisdiction will apply the same bar, as in such cases equity follows the law ; but the law gives no remedy in cases of resulting trust. Such cases are within the proper, peculiar and exclusive jurisdiction of courts of equity, and relief should be granted within a reasonable time ; and what is a reasonable time depends on the facts of each particular case.

*Vories & Vories* and *Woodson, Jr.*, for defendants in error.

The statute of limitations set up in defendant's answer was a good bar to plaintiffs' demand. The petition of plaintiffs was filed August 27, 1868, and charges that in the year 1858 the plaintiffs sold and conveyed the land set out in their petition. The trust, as charged in the petition, grows out of the alleged fraud of defendant, which makes a case of constructive trust growing out of a charged detected fraud, which, under our statute (2 Wagn. Stat. 918, § 10), is barred in five years after its discovery by the aggrieved party, continued from 1855 and 1857. Hence, if the charge in the petition be true, and defendant, when he purchased the land, was a trustee, then the very moment he claimed the land as his own, and denied and repudiated such trust, and plaintiffs knew of that fact, the statute commenced running. (Keeton's Heirs v. Keeton's Adm'r, 20 Mo. 538–546, and authorities referred to ; The State, etc., v. Willi, 46 Mo. 236, and authorities.) Before the statute under consideration was adopted, courts of equity, in cases such as the one at bar, applied the very doctrine of the statute ; and since our code, which does away with all distinction in many respects between law and equity, the statute prescribes one common-law principle in all cases.

ADAMS, Judge, delivered the opinion of the court.

This suit was originally commenced against both defendants, but was compromised and dismissed as to Whitehead and continued

against the other defendant, Hunter. The facts, as they clearly appear from the pleadings and proofs, are these : The plaintiffs, Marcus L. Hunter and Mary Jane Buntain, are brother and sister, who, when they were small children, resided with their parents in Buchanan county; and their parents died, leaving them the owners in fee of 160 acres of land in Buchanan county. These infants were removed to the State of Illinois, and are still residents of that State. The defendants, John Hunter and Whitehead, are brothers-in-law, and uncles of the plaintiffs. Whitehead assumed to act, and did act, as agent for the plaintiffs in Missouri, in looking after and overseeing their land, and in payment of the taxes ; and the defendant Hunter acted as agent for them in Illinois, in seeing that moneys were remitted to the agent in Missouri for payment of the taxes, and did all the correspondence for plaintiffs in regard to their land in Missouri. After the plaintiff Marcus L. Hunter had become of age, and while his sister was eighteen or nineteen years old, but married to Buntain, they concluded to sell their Missouri land and authorized their two uncles to sell the land. Whitehead, the Missouri uncle, proposed to purchase the land, and offered $20 per acre for it ; asserting, in letters written to the defendant Hunter, that the land was worth only $20 per acre, which letters were shown to the plaintiffs. A conspiracy was formed between the two uncles to obtain the land at a greatly reduced price. Both of them were well aware that the land was worth a much larger amount than Whitehead proposed to give, but this fact was carefully concealed from the plaintiffs. The purchase was to be made in the name of Whitehead, who was to sell the land and share the profits with the defendant Hunter, who was to obtain from the plaintiffs the deed for the land. The plaintiffs, confidently relying upon the integrity of the two uncles, finally agreed to sell the land to Whitehead for $20 per acre, amounting to $3,200 ; and in the spring of 1858 the sale was completed and the deed executed by the parties in Illinois, and sent to Whitehead. It appears that Whitehead thought that there were some informalities in the acknowledgments, and also ascertained that the plaintiff Mary Jane Buntain was under age when she made the deed. He therefore sent the

deed back to Illinois to have it properly acknowledged, and also applied to the husband of Mary Jane Buntain to give a bond that they would make a good deed when she became of age. In the meantime the defendant Whitehead sold the Missouri land on time at $50 per acre, amounting to $8,000. This sale was made in 1858, in a very short time after the purchase from plaintiffs.

The plaintiffs having learned the greatly enhanced price the land sold for, refused to make any other deed or acknowledgments. The defendant Whitehead, in furtherance of the fraudulent conspiracy, in order to obtain the title of Mary Jane Buntain, commenced a suit by order of publication in the Buchanan Court of Common Pleas, for the partition and sale of the land, claiming to be the owner of one half, and the plaintiff Mary Jane Buntain the other half. This partition suit resulted in the sale of the land, no defense having been made, and no other notice having been given except the order of publication. The defendant Whitehead purchased it in 1859, at this partition sale, at the nominal price of $1,500, and after deducting the costs gave bond to account for plaintiff Mary Jane Buntain's half. After thus completing his title, Whitehead made a deed to the person to whom he had sold the land, who is alleged to be a purchaser for value without notice; but whether he was so or not, does not appear from the evidence.

In 1859 the plaintiffs employed counsel to bring suit against their uncles to set aside the sale, or for the profits made on the sale by Whitehead. But for some reason not appearing, this intended suit was abandoned.

After Whitehead had thus sold the land and received the purchase-money, he refused to account to the defendant Hunter for his share of the gains, and Hunter brought suit against him and recovered a judgment in the Buchanan Court of Common Pleas for some $2,000 or more. The defendant Hunter has never received any part of the gains, or any part of the judgment he recovered against Whitehead. But after the dismissal of this suit as to Whitehead, the plaintiffs caused him to be garnished in this case for the amount of said judgment.

This suit was brought on the foregoing facts, to constitute the defendants Hunter and Whitehead trustees for the plaintiffs, and

29—VOL. L.

to compel them to account for the profits they made on the re-sale of the land.

The defendant, by his answer, sets up the bar of the statute of limitations of five years, alleging that the cause of action did not accrue within five years next before the commencement of this suit. It will be seen at once that the main point is whether the five years' limitation applies to a case of this kind.

There can be no question but that the facts of this case constituted the defendants, Hunter and Whitehead, trustees for the plaintiffs. They stood in a confidential relation to the plaintiffs. Being their agents for the sale of this land, it was their duty as such to act alone for their benefit; and in making the purchase themselves, at an under-value, they became trustees by implication, holding the title for the plaintiffs. The fraud was not fully completed until Whitehead purchased at the partition sale, which was in 1859, less than ten years before the commencement of this suit. The plaintiffs had two remedies. They might have brought suit to set aside the sale, and for the recovery of the land itself; or they could sue as they have done, for the proceeds resulting from a re-sale of the land by Whitehead. Having adopted the latter remedy, they will be barred from pursuing the other. If they had sued for the land itself, in the hands of the defendants as trustees, I have no doubt the ten years' limitation would have applied, instead of the five years. As this suit is for the proceeds of the re-sale, ought not the same rule to apply? This was certainly the rule before the adoption of our code of practice abolishing distinctions in the form of actions, legal and equitable. But while the code abolishes this distinction, "the line of demarcation, the great and essential principles of which underlie the respective systems, is inherent and still exists in the very nature of things." (See Magwire v. Tyler *et al.*, 47 Mo. 115.)

Before the adoption of our code of practice there was no statute of limitations applicable to equitable cases. Courts of equity, however, following the rules of law, applied the same limitations to equitable cases. If the case concerned realty, or trusts growing out of realty, the twenty years' bar was adopted; if it

concerned personalty, the five years' bar, which applied to personal actions, was followed. ( Keeton's Heirs v. Keeton's Adm'r, 20 Mo. 530.) When our Legislature made the new code of practice in 1849, it became necessary to enlarge our statutes of limitations so as to comprehend both legal and equitable remedies, and these statutes have been enlarged so as to apply to both legal and equitable cases.

The defendant has set up the five years' bar, which will be found in section 3 of article II of the limitation act of 1855 (R. C. 1855, p. 1048). The fifth clause of that section is " an action for relief on the ground of fraud, the cause of action to be deemed not to have accrued until the discovery by the aggrieved party of the facts constituting the fraud."

This clause is in the same section which applies to personal actions, included under the five years' limitation. If we look at the prior statutes *in pari materia*, we will find that this clause is only an enlargement of the former statute so as to comprehend equitable cases. It was not the intention of the Legislature to comprehend actions relating to lands in this clause. The Legislature did not intend to limit a party in an equitable action for the recovery of land by the five years' bar. There could be no reason whatever for such a short limitation, or for any alteration of the equitable rule which existed before the statute.

The first section of the first article of the act above referred to (R. C. 1855, p. 1045) prescribes ten years as the limit for the recovery of lands. Under this section, if a suit was brought to set aside a fraudulent conveyance of land, and for the possession of the land, ten years would be the limitation. This suit is, however, to establish a trust and to recover the proceeds of a re-sale of the lands. The same length of bar ought to apply to this case, and would under the old rules of equity.

But if this case is not covered by the section above referred to, it must be governed by the last clause of section 2 of article II of the limitation act of 1855. (See R. C. 1855, p. 1047.) That is the third clause, and reads: " Third, actions for relief not herein otherwise provided for." Under this clause ten years is the bar. This clause seems to have been made to cover equitable cases, as well as others not falling under any other part of the

statute. Taking the whole act together, and the law as it stood before the statute, and the equitable doctrine on the subject of limitations, I am of the opinion that the ten years' bar applies to all actions for the recovery of land, or for the enforcement of trusts growing out of lands or their proceeds.

Where the case is one of fraud, the statute in no case will commence to run till the discovery of the fraud. This was always the equity doctrine, and is still the doctrine under our code. What constitutes such discovery is the only question. If a party is in possession of, or has notice of, the main fact constituting the fraud, the statute will commence running from that time. In this case the plaintiffs knew, before the consummation of the fraud in 1859, all about what the land had been re-sold for, and hence from that time the statute commenced running; but ten years had not expired when this suit was brought. Even if ten years had expired, the plea only set up the five years and not the ten years, so there was no proper plea of the ten years' bar set up in this suit.

Under this view neither of the plaintiffs were barred by the statute of limitations, and it is unnecessary to discuss the question whether the plaintiff Mary Jane Buntain, by joining in a suit with the plaintiff Marcus L. Hunter, lost the benefit of the disability of marriage existing in her favor. The only remaining question is, what decree ought to be rendered against the defendant Hunter? He has never in fact received any part of the gains made by the re-sale. Trustees are only bound for what they realize. They are not jointly bound unless the funds were received by them both. Each must account, in a case like this, for what comes into his hands. The defendant Hunter has recovered judgment against his co-trustee for his share of the proceeds, but has not received payment of this judgment. The plaintiffs, therefore, are entitled to the benefit of this judgment, or to what has or may be realized out of it, less what it cost the defendant Hunter to obtain the judgment. The Court of Common Pleas will therefore enter a judgment to this effect in favor of the plaintiffs, and carry the same into execution; and for this purpose the judgment is reversed and the cause remanded. The other judges concur.