Davis v. Fox, et al.

————o————

OSCAR F. DAVIS, Appellant, *vs.* HENRY A. FOX, MARTHA J. MASON and ADOLPHUS MASON, her husband, Respondents.

1, *Equity—Bill to set aside deed on ground of duress—What proof necessary to support petition.*—In suit to set aside a deed on the ground that it had been made under duress; *held*, 1st, that a verdict for defendant in the trial court would not be set aside unless the evidence clearly preponderated in favor of the plaintiff; 2d, that where plaintiff failed to assert his rights for a space of seven years, it would take an undoubted and conclusive case of duress to authorize a court of chancery to interfere.

*Appeal from Nodaway Circuit Court.*

*Heren & Rea,* for Appellant.

I. A party making a deed under duress can enter and avoid such deed against a *bona fide* purchaser. (Worcester vs. Eaton, 13 Mass, 371; Somes vs. Skinner, 16 Mass., 348; 11 Mass., 379; 2 Black. Com., p. 290; 3 Black Com., p. 173–5.)

*Dawson & Edwards,* for Respondents:

I. A contract procured by fraud, duress and violence is not absolutely void, but only voidable; because the person upon whom the fraud and duress was practiced may ratify and affirm the contract. (1 Pars. Cont., 395; 1 Poth. Oblig., 14; 1 Black's Com., Chitty's ed., 291; 2 Wash. Real Prop., 586; Deputy vs. Stapleford, 19 Cal., 302.)

II. The respondents, Mason and Mason, being *bona fide* purchasers for a valuable consideration without notice, are

not affected by the fraud or duress of their grantor. They hold the title purged of the original fraud or duress. (Jackson vs. Henry, 10 Johns., 184; Fletcher vs. Peck, 6 Cr., 133-135, (p. 87); Somes vs. Brewer, 2 Pick., 183; Bean vs. Smith, 2 Mason, 252; Dexter vs. Harris, *Id.*, 531; Anderson vs. Roberts, 18 Johns., 513; Deputy vs. Stapleford, *supra*; 1 Sto. Eq. Jur., §§ 434, 436.)

III. The appellant's silence for years after Fox had conveyed the land in controversy to the respondents, Mason and Mason, is as conclusive upon him as if he had been a party to the conveyance to them. (1 Sto. Eq. Jur.; 385; Storr and Brooks vs. Barker, 6 Johns. Ch., 166; Wendell vs. VanRansselær, 1 Johns. Ch., 343.)

IV. The evidence in this case is not sufficient to establish duress *per minas.* (Dallam vs. Renshaw, 26 Mo., 533, 544.)

Vories, Judge, delivered the opinion of the court.

This action was brought in the Nodaway Circuit Court, on the fifth day of March, 1870. The object of the action was to set aside a deed executed by the plaintiff in the month of July, 1863, purporting to convey certain lands therein named from the plaintiff to the defendant, Fox; and also to set aside and make void a deed executed by said Fox, conveying the same land to defendant, Martha Mason, who was the wife of her co-defendant, Adolphus Mason, on the ground that said deed from plaintiff to said defendant, Fox, had been obtained from plaintiff by force and duress.

The amended petition filed in the case by plaintiff, and upon which the trial was had, is substantially as follows:

That the plaintiff, on the 8th day of July, 1863, was the owner in fee of about seventy-three acres of land in Nodaway county, which is particularly described in the petition; that the value of said tract at said time, was two thousand dollars; that on or about the 7th day of July, 1863, the defendant, Henry A. Fox, came to the plaintiff at Maryville, Missouri, and demanded a deed conveying to said Fox the said lands before referred to; that shortly afterwards, and during

the same day, one David Nelson came to plaintiff and informed him that he (Nelson) was instructed by defendant, Fox, to tell plaintiff that he, said Fox, intended to kill plaintiff, unless plaintiff deeded said land to Fox; that the next morning said Fox came to plaintiff and demanded that plaintiff should go to the court house and make and acknowledge a deed to said Fox for said land, and not to leave town until he did so; and that plaintiff was further ordered that when he got to the court house he should not open his mouth; that plaintiff afterwards told defendant, that if he would give up to plaintiff his deed which defendant had obtained from plaintiff, and give plaintiff his word and honor that he, defendant, would not molest plaintiff, and would let plaintiff pass out of the State, that plaintiff would give him one hundred dollars; that defendant replied to plaintiff, that nothing but the land or plaintiff's life would satisfy him, and that if plaintiff did not deed said defendant his land immediately, defendant would take his life.

The petition then, after referring to the troubled state of the country at the time in consequence of the civil war then existing, and to the fact that several of plaintiff's neighbors had just previous to that time been killed at their homes in plaintiff's neighborhood, proceeds to state that he was induced, through fear and terror caused by the threats of said defendant, Fox, to execute and deliver a deed conveying his said land to said Fox, for a mere nominal consideration fixed by said Fox, without the consent of the plaintiff; that the consideration so fixed was one old wagon, two mares, one mule colt and one set of harness of the value of one hundred and seventy-five dollars; that afterwards, on the 25th day of April, 1864, the defendant, Fox, conveyed said land to defendant, Martha J. Mason; that the said Martha and her husband, Adolphus Mason, had notice at the time of their purchase of the land, that the deed from plaintiff to Fox for said land was obtained by force and duress as aforesaid. The plaintiff, therefore offers to bring into court to be repaid to said Fox the sum of $175, the alleged value of the property received

by him for said land, and prays the court to cancel and make void the deed from plaintiff to Fox, and also the deed from Fox to Martha J. Mason, and to re-invest the title to said land in the plaintiff, and for other relief, etc.

The answer of defendant, Fox, fully denies all of the material allegations in the petition, and states that he purchased the land named in the petition of plaintiff at his solicitation and request, and for a fair price freely and fairly agreed on between the parties, and which was freely agreed on and received by plaintiff, etc.

The defendants, Martha and Adolphus Mason, in their answer deny all of the allegations of the petition, and charge that they purchased the land of the defendant, Fox, for a fair and full consideration paid for the same by them, and without any notice of any claim or right in plaintiff to said land whatever, and that they, without any notice of plaintiff's claim, had made large and valuable improvements on said land, etc.

Replications were filed, putting in issue the affirmative allegations in the answers. After hearing the evidence in the cause upon the trial, the court found for the defendants, and rendered a judgment in their favor and against the plaintiff for costs.

The plaintiff in due time filed a motion for a re-hearing of the cause, setting forth as grounds for said motion, that the judgment was against the law and the evidence, and against the weight of the evidence. This motion being overruled by the court, the plaintiff excepted and appealed to this court.

There are two points presented to this court for consideration : 1st. Does the evidence in the case show such a state of facts as will authorize the court to find that the defendant, Fox, obtained the deed to the land in controversy from plaintiff, without the consent of the plaintiff, and by threatened violence as is charged in the petition ; and therefore to declare said deed to be void. 2d. If the evidence in the case should be considered sufficient to warrant a cancellation of the deed from plaintiff to said Fox, can the court under the

law, cancel the deed from Fox to Mrs. Mason, unless the evidence should show that Mason purchased with notice of the defect in Fox's title, or that plaintiff still had some claim to the land, or, in other words, will the fact that the deed was obtained by duress, avoid a deed to an innocent purchaser for value of the land from the fraudulent vendee?

The first of these questions must be determined as a matter of fact to be found by the evidence in the case, and if it should be solved in favor of the defendants in the case, it would render the solution of the second question wholly unnecessary.

When we refer to the evidence given by the respective parties on the trial of the cause, we find it to be painfully conflicting and contradictory. The plaintiff, by his own testimony, fully sustains the allegations of the petition in reference to the violent threats and duress on the part of the defendant Fox. He details with a great deal of circumstance and particularity the manner in which he was induced by fear of personal injury, threatened by said Fox, to execute the deed for the land to Fox without any choice on his part, and against his will. Plaintiff also testified that there were about seventy-three acres of the land worth from $25 to $30 per acre, which was conveyed to Fox for a wagon, two mares, a mule colt and a set of harness, worth in the aggregate from one hundred and seventy-five to two hundred dollars. In fact, if the plaintiff's evidence was uncontradicted and should have full credence, his petition and the charge of duress made therein is fully made out and sustained. The plaintiff also introduced one Nelson as a witness, whose evidence in some of the most material particulars corroborated and sustained the evidence of the plaintiff. A number of other witnesses were introduced by plaintiff, whose evidence in some degree, although in most cases in a very slight degree, tended to sustain the plaintiff's theory of the case.

It may be here remarked, that at the time, and for some time before the time that plaintiff conveyed the land in question to Fox, there had been great commotion and excitement

9—VOL. LIX.

in the neighborhood where the plaintiff resided, and only two or three miles from where defendant Fox resided; that the excitement grew out of the conduct of the partisans of the respective parties at the time engaged in a civil war in this country; that several of plaintiff's neighbors had been killed only a few days before the day on which plaintiff conveyed the land, which was the 9th day of July, 1863; that owing to the disturbed condition of the country as aforesaid, plaintiff and others in the same neighborhood were fixing to leave, and leaving not only that neighborhood, but the State of Missouri, in order to get themselves and families in a place of personal safety; that a great many of such persons designing to remove from the State, were selling or trying to sell their farms and other property that they could not remove with them; that the plaintiff with his family started from his place sixteen miles south of Maryville, on the morning of the 8th day of July, 1863, to remove to Nebraska; that on the night of the 8th of July, 1863, plaintiff stayed all night at Maryville, where on the morning of the 9th the deed in question was made.

The defendant was also examined as a witness in the cause, and testified in his own behalf. The defendant's testimony was in direct conflict with the testimony given by plaintiff. He testifies that he met with plaintiff on the 8th day of July, 1863, as he was traveling with his family on the road to Maryville; that the plaintiff of his own accord proposed to trade his land to said Fox, for his wagon, two mares and a colt and set of harness; that they failed to trade on the road, but that he came to Maryville that night, where he again saw plaintiff, and where and when they made a trade by which plaintiff conveyed to him the land in question for the wagon and other property named. The defendant also testified that the wagon, mares and other property given to plaintiff for said land were worth from three hundred and fifty to four hundred dollars, and that the land was not worth to exceed five dollars per acre. His evidence is clear and positive to the effect that he used no threats to obtain the deed to the

land; but that it was made by plaintiff as his own free will and choice for a consideration freely agreed on by plaintiff.

There was a great quantity of evidence in the case which had not much materiality in it. I will only notice the evidence of a few of the witnesses, which seem to be in conflict with the plaintiff's statement of the case or inconsistent with his evidence.

Sarah T. Weaver testified that she was well acquainted with plaintiff, resided near by him previous to the 8th day of July, 1863, at which time he started to remove to Nebraska; that plaintiff was at her house on the morning of the 8th of July, 1863, stopped there as he was moving; said he wanted to sell his farm. Witness told him she was not able to buy ; did not know that he set any price per acre on his land, but he offered his place to witness for a horse, a wagon and one hundred dollars in money. The horse was afterwards sold for $125 and the wagon for about $30. Witness told plaintiff that she thought he was foolish for going away or leaving his farm ; he replied that he would sell it so cheap he would make witness buy it; that he was bound to sell his farm, and would as soon let witness have it as any one of his neighbors.

Reuben P. Weaver, a son of Mrs. Sarah T. Weaver, was also examined as a witness, and fully corroborated the evidence of his mother in reference to the offer by plaintiff to sell his land on the morning that he started. Said witness further testified, that after plaintiff had offered to sell his land on the morning of the 8th day of July, a friend of his named Hawley called at the house of his mother ; that he was informed of the price at which plaintiff had offered to sell his land ; that said Hawley thought the land was cheap at the price ; said he could raise the money ; and that witness and Hawley followed on after the plaintiff to Maryville ; got there on the morning of the 9th of July, with a view to purchase plaintiff's land, but found that plaintiff had sold the land to defendant Fox.

Perry Wright testified that he was acquainted with the wagon, mares and other property given by Fox to plaintiff for the land, and that it was worth in the aggregate about $450. Andrew Terhune, as well as several other witnesses, testified that they were acquainted with the price of land in the neighborhood, and that plaintiff's land, at the time of the sale to Fox, was not worth more than from five to six dollars per acre.

Matthew G. Roseberry, a witness for defendants, testified that he knew plaintiff and defendant, Fox, in July, 1863; that he resided at that time in Maryville, Nodaway County, Missouri; that he had a conversation with plaintiff in July, 1863, when he was in Maryville, on his way to Nebraska; that witness was at the time acting as provost marshal at Maryville, and that O. F. Davis or H. A. Fox spoke to him about a pass; was not sure which of the two spoke to him first. Witness had one or two conversations with plaintiff about his trade of his land to Fox. One of said conversations took place in the street in front of the court house, about the time the wagon and horses were delivered to plaintiff. Witness made some remark to plaintiff about selling his place, in which something was said about the consideration received for the land. Plaintiff remarked that he was not getting very much for his land, but that he would rather let Fox have it than any one else, because Fox had befriended him. Witness had another conversation with plaintiff where he was encamped; could not recollect whether it was before or after the conversation related. Witness went down to plaintiff's camp; wanted to know of plaintiff the facts about his leaving the country. Witness asked him why he was going away; he replied that he did not think he was safe where he lived. Witness told him that he was in no danger; he could stop at Maryville until the excitement was over, if he was afraid to stay down at his house on his farm. Witness told him he would better keep his place, it might be of use to him when he came back. Plaintiff replied that he would rather sell it, even if he did not get what it was worth;

that his farm would not be worth anything if it was left there; that he would rather have something than nothing; that the farm would go down and be worth nothing; that plaintiff then proceeded to state that he would rather sell the farm to Fox as he had befriended him; he did not appear to apprehend any danger where he then was; he only appeared to be afraid to stay down where his farm was. This witness also testified that plaintiff's land was not then worth more than five dollars per acre; and that he was acquainted with the price of land at the time.

William H. Davis, another witness, stated that he resided in Maryville, Nodaway county, on the 8th and 9th days of July, 1863; that he was acquainted with plaintiff and defendant, Fox, at and before said time; that he was keeping hotel in Maryville; that he saw plaintiff in Maryville when he was there on his way to Nebraska; it was shortly after the 4th of July, 1863; that he had a conversation with plaintiff early in the next morning after he got to Maryville with his family, and learned from him that he had made a bargain with Mr. Fox; witness thinks that no writings had then been executed. Witness asked plaintiff if he did not think he had made a bad bargain in selling his property at the price he had. He said that he did not know he had under the circumstances; that he could take the wagon and team that he got from Fox and buy a farm worth more than his. Witness asked him what farm it was; he said it was the old Hauseman farm the first one beyond Breckenridge's place. Witness further testified that plaintiff talked freely with him; that the talk was in presence of plaintiff's family where they were encamped; that plaintiff and his family told witness all about their reasons for leaving the country, etc.

There was a mass of other evidence in the case, some of which tended to prove that the wagon, team and other property received of Fox for the land, was worth from four hundred to four hundred and fifty dollars, and that plaintiff had offered his farm to other persons for three hundred dollars in cash; but it would serve no useful purpose to repeat or further refer to the other evidence in the case.

The evidence on the question of duress is certainly conflicting, and where the evidence to establish a certain fact, or to destroy the presumption of or existence of such fact, is conflicting and irreconcilable as it certainly is in this case, the court must, if possible, decide in accordance with the preponderance of the evidence. The Circuit Court has decided this case for the defendant; and if it was decided on the ground alone that the evidence, when all taken together, did not make out a case of duress as is charged in the petition, or that the evidence preponderates in favor of the defendants, this court would not under the evidence in the case feel justified in reversing the judgment; for there is certainly much evidence in the case which is wholly inconsistent with the idea that plaintiff was forced by Fox to make the deed. In such case we would not reverse the judgment rendered by the trial court, merely on the evidence in the case, unless the evidence very clearly preponderates against the finding of the court. This we cannot say is so in reference to the case under consideration.

It may be further remarked, that where in a case like this, a party fails to assert his rights for a space of seven years, and fails for said time to offer to return the consideration received for the land, it would take a very strong, undoubted and conclusive case of duress to authorize a court of chancery to interfere.

With the foregoing view of this case it is rendered wholly unnecessary that we should notice the second point made by the parties in this court. The judgment of the Circuit Court will be affirmed; the other judges concur, except Judge Hough, who did not sit in the case.