KINNE *et al. v.* WEBB *et al.*

(*Circuit Court, W. D. Missouri, W. D.* March 7, 1892.)

**1. CANCELLATION OF CONTRACT—LACHES—RESTITUTION.**
Complainant, being one of the beneficiaries under the will of her deceased husband in a large estate, consisting principally of mining lands, in April, 1883, entered into a contract of settlement with the other beneficiaries, under which she quit-claimed and released to them all her interest therein, in consideration of a cash payment. In July, 1883, she instituted suit in the state court to set aside such contract on the ground of fraud and deceit, and for an assignment of dower. Subsequently dismissing such suit, in April, 1884, she renewed it, and again discontinued it in December, 1884. In February, 1890, she brought suit in the federal court for the same relief, on substantially the same grounds, but made no offer to return the consideration received. *Held,* notwithstanding undue advantage had been taken of complainant, she was not entitled to relief in equity, for laches and failure to offer restitution. The doctrine of laches has a special application to contracts and transactions affecting mineral lands, which are exposed to the utmost fluctuations in value.

**2. SAME.**
It cannot be claimed, in excuse of the failure to make restitution, that complainant would be entitled to the amount paid her as a distributive share of the estate, where the amount of her share is but conjectural.

In Equity. Bill by Sarah M. Kinne and others against Elijah T. Webb and others to set aside a contract of settlement, for fraud and deceit, and to have dower assigned. On pleadings and proof. Dismissed.

*R. O. Boggess* and *I. J. Ketchum,* for complainants.

*Karnes, Holmes & Krauthoff,* for respondents.

PHILIPS, District Judge. The complainant Sarah M. Kinne is the widow of John C. Webb, deceased, since intermarried with Ezra B. Kinne. On the 13th day of April, 1883, the said John C. Webb died testate at Webb City, Jasper county, Mo., leaving the respondents hereto, with the said Sarah, his sole heirs at law, and beneficiaries under his said will. He died possessed of considerable property, personal and real. The real estate consisted principally of mineral lands containing lead ore. Soon after his death, and prior to the probate of his will, negotiations took place between the widow and his children by a former wife, looking to an immediate adjustment and payment of the interest of the complainant in said estate, which resulted on the 24th day of April, 1883, in a contract of settlement by which, in consideration of the sum of $15,000 in cash then paid to her, the complainant, by deed of release and quitclaim, conveyed her entire interest and claim in and to the real and personal estate to the respondents, children of said decedent by his first wife. Shortly after the probate of the will the complainant manifested dissatisfaction with the terms of settlement, and, after filing in the probate court her renunciation of the provisions of the will, she instituted suit in the state circuit court of that county to set aside the deed of release, as having been obtained through fraud and deceit, asserting a right of dower in said property, and praying for its assignment. This suit was abandoned by her, and within a year she renewed the same in the same jurisdiction; and again, in December, 1884, she discontinued said

second suit, after taking depositions therein. She took no further action in the matter until the 7th day of February, 1890, when the present suit was instituted in this court.

If this case were to be determined on the merits of the issue, as to whether the complainant ought to be relieved from the contract of settlement on the ground of an undue advantage taken of her, I should encounter serious opposition, in my sense of justice, in holding her to the contract. But there lies at the threshold of this controversy the preliminary question, conceding the *gravamen* of her complaint, has she exercised that degree of diligence, and made offer of restitution, which the established rules of equity exact, to give her a firm foundation in a court of chancery? This being a suit in equity to set aside a contract of settlement and release alleged to have been obtained fraudulently and against good conscience, what is there in its character and attendant circumstances to withdraw it from the operation of the general rules of law and equity governing like actions? Among these settled rules is the requirement that he who would avoid a contract on the ground of fraud or oppression, upon the discovery of the wrong, should act promptly and energetically in demanding restitution before the *status* of the property is materially changed; and, where he seeks a rescission, he should offer to return what he has received under the contract, so as to place the parties *in statu quo* in respect to the subject-matter of the contract. As aptly put by SHERWOOD, C. J., in *Estes* v. *Reynolds*, 75 Mo. 565:

"If he elects to disaffirm the contract in consequence of deception practiced upon him, such election, in order to avail him, must have the chief and essential element of promptitude, and he must put the other party in the same situation as he was before the contract was made."

Citing *Jarrett* v. *Morton*, 44 Mo. 275, in which it is said:

"If the plaintiff would repudiate a settlement, he must put the other party in the same condition he was before it was made. He cannot appropriate its benefits and deny its obligations. There never was but one doctrine upon this subject; and the books are full of decisions that, if a party would rescind a contract for fraud or other cause, he must, as far as in his power, put the other party in the condition he would have been in had the contract not been made."

And this rule has recently been emphasized by that court in *Taylor* v. *Short*, 17 S. W. Rep. 970, in which it is held that, in an action to rescind the original transaction and exchange, the plaintiff waived the fraud by not electing to rescind upon the first discovery of fraud, and that the right to rescind did not revive by a subsequent discovery of some incident of the fraud.

The complainant neither, prior to the institution of this action, tendered back the $15,000 in money received in execution of the contract, nor does she offer to do so in her bill. Counsel, while conceding the rule, contend that it has reference more particularly to the rescission of ordinary contracts of barter, exchange, and sale, and should not be applied to a case like this, where the complainant would in any event, according to their claim, be entitled to have and hold as her distributive share of

the estate a sum of money equal to $15,000. This is plausible, but I fail to find any positive authority or precedent for it. The interest of the wife on the vacation of such settlement would be that of a dowress,—a life-èstate in one-third of the lands of which the husband died seised, and a child's part in the personalty, the latter subject to debts. Whether the interest thus coming to her would be of the cash value of $15,000 would depend upon the state of facts existing at the time of the allotment. It might be more or less. What the cash value of her interest in the lands would be at the time of the assignment is but speculative. What her interest in the personalty would be after its administration, could be but conjectural at the time. There were no means of definite ascertainment. It therefore lies within the category of disputable facts. A part of the money she received has since been invested in a house and lot, and whether she has a dollar in money or credit left is unknown. If her interest in the personalty turned out to be less than $15,000, she would have to account for the excess in money. What, then, becomes of the reason of the rule of restitution in order to entitle one to a rescission? Restitution or offer to return precedes the right of action. The parties are to be placed *in statu quo* in order to secure equality in the chances of new litigation. The rule does not contemplate the taking of evidence after suit brought to enable the court to say whether or not the suitor retains only his dues in any event. The voluntary antecedent act of the party complaining must eliminate such question from the controversy.

The case of *Courtright* v. *Burnes*, just published in 48 Fed. Rep. 501, aptly illustrates this view of the rule. Burnes was unquestionably indebted to Courtright in a large sum. They made a compromise settlement, which Courtright sought to set aside for fraud and undue advantage alleged to have been taken by Burnes of Courtright's agent. Part—an inconsiderable part—of the property turned over by Burnes to Courtright in execution of the settlement consisted of lands. It was held that Courtright could not maintain the bill to set aside the settlement without tendering a reconveyance of this land. Mr. Justice MILLER, who delivered the opinion, said:

"We do not see how we can get rid of the argument that since Courtright desires this settlement to be set aside the parties must be placed in the situation in which they were before the settlement was made, and the interest in these lands be reconveyed by Courtright to Burnes."

The same rule is announced by the supreme court in *McLean* v. *Clapp*, 141 U. S. 429, 12 Sup. Ct. Rep. 29, which was a suit in equity to set aside a settlement, in execution of which the complainant had received certain notes from the debtor respondent. Mr. Justice BREWER, for the court, said:

"Now, if he desired to rescind his contract, his duty was at once to return what he had received, and repudiate wholly and forever the transaction. So far from doing this, he did exactly the contrary. He retained the notes and securities received in the settlement, and has never yet returned one of them."

In the recent case of *Ackerman* v. *McShane*, 43 La. Ann. ——, 9 South. Rep. 483, it is held that money received in a compromise cannot be re-

tained, and at the same time the contract annulled. Tender or deposit of the sum is an essential allegation. So long as the plaintiff retains the consideration, and does not tender or deposit the amount received, he is estopped. The complainant here has kept and used as her own all she received in execution of the contract, and seeks to avoid the contract under which she holds it without offering to make restitution. This she cannot do.

Closely allied to what precedes, there is another obstacle in the way of reaching the merits of this case. "Where a party desires to rescind upon the ground of mistake or fraud, he must, upon the discovery of the facts, at once announce his purpose, and adhere to it. If he be silent, and continue to treat the property as his own, he will be held to have waived the objection, and will be conclusively bound by the contract, as if the mistake or fraud had not occurred. He is not permitted to play fast and loose. Delay and vacillation are fatal to the right which had before subsisted. These remarks are peculiarly applicable to speculative property like that here in question, which is liable to large and constant fluctuations in value." *Grymes* v. *Sanders*, 93 U. S. 62.

While there has been a lack of uniformity in the application of the doctrine of laches, by our state supreme court, noticeable in the following adjudications: *Moreman* v. *Talbot*, 55 Mo. 392; *Davis* v. *Fox*, 59 Mo. 125; *Kellogg* v. *Carrico*, 47 Mo. 162; *Bliss* v. *Pritchard*, 67 Mo. 181; *State* v. *West*, 68 Mo. 229; *Landrum* v. *Bank*, 63 Mo. 56; and *Kelley* v. *Hurt*, 74 Mo. 561,—there can be no question as to the settled rule in the federal jurisdiction. In cases of concurrent jurisdiction, courts of equity recognize the statutes of limitation governing courts of law; but in cases cognizable alone in equity, while having regard to analogies to like limitations under statutes, on questions of the lapse of time and staleness of the claim and estoppels *in pais*, courts of equity act upon their own inherent doctrine of discouraging slothfulness and disturbing society and private interests after undue acquiescence. They will shorten the statutory period whenever and wherever the interests of justice demand it. "To let in the defense that the claim is stale, and that the bill cannot, therefore, be supported, it is not necessary that a foundation shall be laid by any averment in the answer of the defendants. If the case, as it appears at the hearing, is liable to the objection by reason of the laches of the complainants, the court will upon that ground be passive, and refuse relief. It is competent for the court to apply the inherent principles of its own system of jurisprudence, and to decide accordingly." *Sullivan* v. *Railroad Co.*, 94 U. S. 807.

In *Oil Co.* v. *Marbury*, 91 U. S. 592, Mr. Justice MILLER said

"In fixing this period in any particular case, we are but little aided by the analogies of the statutes of limitation. While, though not falling exactly within the rule as to time for rescinding, or offering to rescind, a contract, to one of the parties to it, for actual fraud, the analogies are so strong as to give to this latter great force in the consideration of the case. In this class of cases the party is bound to act with reasonable diligence so soon as the fraud is discovered, or his right to rescind is gone. No delay for the purpose of enabling the defrauded party to speculate upon the chances which the future

may give him of deciding profitably to himself whether he will abide by his bargain, or rescind it, is allowed to a court of equity."

This rule has a pointed and salutary application to controversies like this, regarding mineral lands. Such property is exposed to the utmost fluctuations in value. Its wealth lies beneath the surface. It is hidden from the view. Money, energy, labor, and skill are required to develop it. To-day the indications are full of promise. To-morrow, they are as full of discouragement. The mine which to-day may be deserted and out of consideration, or which, being worked, produces small results, may in a few years, by persistent energy and the expenditure of money, turn out to be vastly productive and valuable. The courts all say, respecting suits to vacate contracts affecting such property, and attempts to reclaim it, the party will be held to the highest diligence and acceleration in his movements. He cannot stand by and speculate on the chances. He cannot delay, and say, by his acts: "It is mine, if it be a good thing. You may keep it, if it be a poor thing." So where parties have waited four or five years, and even a shorter period, after knowledge of the fraud, during which time the property has been improved and its value greatly augmented, the delay constitutes a fatal estoppel. *Oil Co.* v. *Marbury, supra; Clegg* v. *Edmondson*, 8 De Gex, M. & G. 787; *Prendergast* v. *Turton*, 1 Younge & C. Ch. 98; *Johnston* v. *Mining Co.*, 39 Fed. Rep. 304.

The evidence shows that the contract of settlement and deed of release were executed on the 24th day of April, 1883. On the 28th day of July, 1883, she instituted the suit in the state court to set aside this settlement, on substantially the same grounds now taken. Pending that suit her deposition was taken. On March 31, 1884, she discontinued this suit. On the 18th day of April, 1884, she renewed it. On July 18, 1884, the defendant Webb's deposition was taken therein, and on December 2, 1884, she discontinued this suit. Why she did so,—whether from lack of confidence in the merits of her cause, or a lack of fidelity and moral courage in her counsel to confront the local dynasty of the Webb family, or from a perception of their local influence, with their subtle retainers, parasites, and clackers, on the administration of justice in that venue, need not here be inquired into. The fact remains that she passively waited until February 7, 1890, before she renewed the attack in this court,—nearly seven years after her cause of action arose, and more than five years after her last suit was dismissed. During all this time she was under no disability, and the respondents had done no act to lull her into inaction. In the interim she had discovered no new facts of such a character as to alter the legal *status* of her case. True it is, in her supplemental or amended bill, she sets up additional facts which she alleges first came to her knowledge since the filing of the original bill herein. But the weight of evidence contradicting this allegation is so overwhelming as not to leave a pin on which the court can hang a substantial doubt. In the mean while she had surrendered the homestead, applied part of the money arising from the contract of settlement to the acquisition of a new home in her sole right, to which she moved. In the mean time the

condition of the property now sought to be reached greatly changed. Woodlands disappeared before the axe of the tenants; pastures, meadows, and fields appeared where there were outlying waste lands. Permanent homes and tenant houses were built. New leases for mining purposes were made. Abandoned or surface developed mines began to hum with the voices of miners and the ring of the pick and shovel; and shut-down furnaces began to glow with newly-kindled fires. New and costly machinery was bought and put to work on these lands. New mines were opened and worked to unprecedented depths, and unknown mineral wealth was thus developed, at an outlay exceeding $100,000. Much of this unquestionably was predicated of the assurance that the property was not subject to any claim of dower. The proximity of the complainant during all this time to the property warrants the presumption that she had knowledge of all this work of development, and yet stood mute. Her silence and inaction are fatal to her claim, so far as the real estate is concerned.

As to her claim to a new participation in the personal estate, it is sufficient to say the right of action was barred within five years after the discovery of the fraud; and discovery is deemed in such case to take place from the time the party has notice of the main facts constituting the fraud. 2 Rev. St. Mo. § 6775; *Hunter* v. *Hunter*, 50 Mo. 445–451; *Thomas* v. *Mathews*, 51 Mo. 107; *Ricords* v. *Watkins*, 56 Mo. 553. It results that the bill is dismissed.