## Hall v. Bollen.

(Decided April 24, 1912.)

### Appeal from Knott Circuit Court.

1. Deed—Cancellation—Duress—Mental Incapacity—Evidence. — In an action by a wife to set aside a deed on the ground of duress and mental incapacity, evidence examined and held to sustain a finding in favor of the defendant.

2. Deed—Duress—Cancellation—Bona Fide Purchaser for Value.— The title of a bona fide purchaser of real estate for value and without notice, is not affected by the fact that the grantor, a married woman, was under duress imposed upon her by her husband at the time the deed was executed and acknowledged.

3. Deed—Duress—Cancellation—Unreasonable Delay—Ratification.— Where the purchase price of land is paid to the husband, and by him, with his wife's knowledge, expended for the benefit of the family, and shortly after the conveyance they move from the property, and the purchaser erects valuable improvements thereon, and the wife delays for over seven years to bring suit to avoid the deed on the ground of duress imposed upon her by her husband, this will amount to a ratification of the deed.

4. Deed—Cancellation—Fraud.—In the absence of other circumstances tending to show fraud, the mere fact that the grantor executes and acknowledges a deed to the purchaser's father, though he believes the purchaser is the grantee therein, will not amount to a fraud upon the grantor, where the grantor receives the benefit of the full purchase price.

H. T. BAILEY for appellant.

SMITH & COMBS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Appellant, Linda Hall, was the owner of about 75 acres of mountain land in Knott County, which she inherited from her father, and upon which she and her husband lived. On August 20, 1901, appellee bought the land and the deed thereto, at his request, was made to his father, J. R. Bollen.

On October 8, 1908, or about seven years thereafter, appellant, Linda Hall, brought this action against appellee, Green Bollen, to cancel the deed to J. R. Bollen, and to recover the property from appellee. She pleads duress on the part of her husband, the grantee's failure to pay for the property, and mental incapacity, as grounds for cancelling the deed. On the question of du-

ress, she alleges in substance that her husband told her that if she didn't sell the land or let him sell it, he would leave her, or that she could keep the land and he would go; that if she did sign the deed and acknowledge it, she did it against her will, and at the time she signed it she did not know what she was doing, or was induced to sign it by the threats of her husband. She further says that at the time the deputy clerk came to take her acknowledgment, her little girl was lying a corpse, and had not been dead more than thirty minutes. That she was wholly unable, under the mental strain she was in, to do any business at the time, and does not remember signing and acknowledging the deed. She also says that she never received any benefit from the $150 which appellee Bollen pretended to pay her husband. By amended petition, she further pleaded fraud on the part of appellee because of the fact that the deed was made to his father and not to him. Appellee denied the allegations of the petition, and also pleaded the five-year statute of limitations. Evidence was heard, and, upon final submission, the petition was dismissed. From that judgment this appeal is prosecuted.

Appellant testifies that she did not know for sometime after she and her husband made the deed that it was made to J. R. Bollen instead of Green Bollen. She did not think the clerk really explained the deed to her. Remembered signing something, but was so "pestered" over the death of her child, which had occurred a few minutes before, that she did not know what it was. The death of her child occurred just a short time before the deputy clerk, her husband and Green Bollen came to the house. Her husband had often talked of selling the land, but she had told him she did not want to sell it, whereupon he replied, "By God, you go and I'll stay." Her husband was a very "fractious" man, and she generally did what he told her to do. He never told her about selling the land until after the clerk came to take the acknowedgment. He told her he wanted her to sign it, but she tried to put him off to some other time. He then "frowned his face," and made a motion for her to sign it, and she did so. She then signed it against her will. She was under great mental strain at the time. On cross-examination, she stated that she did not remember what the clerk said to her. She admitted that her husband received some money and some live stock, which he went through with for the benefit of the family. Appel-

lant's mother testifies that she was present when appellant signed the deed. It was about an hour after the child died. The child had been ill for a long time, and she saw that it was perishing, and she was glad that death came. If the clerk did read or explain the deed to her, it was past her recollection. Appellant was in great mental grief, and she did not think appellant was capable of doing any business. On cross-examination, she stated that she never lost her mind in the presence of grief, and did not suppose appellant did. When the clerk took the acknowledgment, he took appellant aside. Her husband walked around the house. The clerk asked appellant if she was signing the deed of her own free will, and appellant said, "Humph."

S. J. Gayheart testifies that appellant's husband, Green Bollen and the deputy clerk came to appellant's house just a few minutes after the child died. People there said that Green Bollen had bought the land of Elijah Hall, and had come to get the deed fixed. He doesn't know whether appellant was grieving at the time they came, but she had been. Was of the opinion that the land was worth about $200 at that time. Previous to this time, he had bought of appellant and her husband 25 or 30 acres, and the best part of the land, for $50, or about $2 an acre.

According to the evidence for appellee, as given by appellee, the deputy clerk and other witnesses, appellee was approached by appellant's husband and asked to purchase the land. He agreed to take it at the price of $180. They then started for appellant's home. On the way, they were informed of the child's death. They went to the house. The deputy clerk took his seat on the porch and wrote the deed. When the deed was completed the clerk required both appellant's husband and appellee to leave. They went around the house. The nature and effect of the instrument was explained to appellant, and she thereupon acknowledged it as her voluntary act and deed. According to the appellee, the deed was made to his father because he was young at the time and had not married. His brother, however, says that the deed was made to his father because his father furnished the money. After the deed was prepared, signed and acknowledged by the parties, appellee paid appellant's husband some cash, and then delivered to him a cow and a yoke of oxen, and paid the balance of the purchase

price by discharging a mortgage lien on the property. Appellant's husband did not indicate in any way that he was compelling appellant to sign the deed, and while she had been crying some, she was perfectly composed at the time the transaction was closed. Under the agreement, appellant and her family could remain on the land until in the fall. They did remain there until that time, and then moved into a house about three miles distant. Appellee put about $600 worth of improvements on the premises, and made a good farm out of it. The farm was worth about $180, the price paid.

We deem it unnecessary to decide whether or not the alleged acts of appellant's husband constituted duress. It is sufficient to say that the appellant may not, in this action, avail herself of such plea. In the first place, the evidence utterly fails to show that appellee or his father, the grantee in the deed, had any knowledge of the alleged acts of the husband. Being an innocent purchaser for value of the property in question, without knowledge of any duress exercised over appellant by her husband, he will be protected in his purchase. Deputy v. Stapleford, 19 Cal., 302; Hall v. Patterson, 51 Pa. St., 289; Compton v. Bunker Hill Bank, 96 Ill., 301, 36 Am. Rep., 147; Rogers v. Adams, 66 Ala., 600; Line v. Blizzard, 70 Ind., 23.

In the next place, it is a well settled rule that where it is sought to avoid a contract because of duress, the person seeking such avoidance must proceed within a reasonable time after the removal of the duress. If he remain silent for an unreasonable length of time, or if he keep property which he may have acquired under the contract, or otherwise recognize the validity of the contract, he will be held to have elected to waive the duress and ratify the contract. Thus in the case of Eberstein v. Willetts, 134 Ill., 101, where it was sought to avoid a deed for duress, an unexplained delay of over three years in bringing the action was held sufficient to ratify the deed. In Davis v. Fox, 59 Mo. 125, the same rule was applied, where there was a delay of seven years. In Gregor v. Hyde, 67 Fed. Rep., 107, a delay of three years in bringing the suit was held sufficient to constitute a ratification. In Schee v. McQuilken, 59 Ind. 269, where a wife sought to avoid a lease on the ground of duress imposed upon her by her husband, and no steps were taken to avoid the lease until three years and a half after

its execution, it was held that her ratification of the lease would be inferred. In this case, the live stock, which constituted a part of the purchase price, was delivered to appellant's husband. She recognized the cow as her property, and stated that no officer could take it under an execution for her husband's debt. The trade was made in August. She and her husband lived upon the land for several weeks, and then moved to a place about three miles distant. Thereafter, appellee, with appellant's knowledge, put valuable improvements upon the land. Notwithstanding these facts, she delayed bringing suit for over seven years. Under the circumstances, her conduct amounts to a ratification of the contract.

The evidence utterly fails to show such mental incapacity on the part of appellant as to prevent her from knowing and appreciating the nature and character of the transaction. There is not only evidence to the effect that she was informed some time before their arrival that the parties were coming to get the deed, but she herself admits that after their arrival she was apprised of the purpose of their visit. Even appellant's mother testifies that the deputy clerk asked appellant if she was signing the deed of her own free will, and the weight of the evidence shows that the nature and effect of the instrument was fully explained to appellant. While the time was certainly inopportune, and showed a lack of delicacy on the part of the parties thereto in asking appellant to execute a conveyance just after the death of her child, this fact, coupled with her distress of mind, is not sufficient to justify the cancellation of the deed. That she was in distress was doubtless true, but it is equally true that in executing the deed she knew and fully appreciated the nature and effect of the transaction.

There is nothing to show that any fraud was practiced upon appellant. There is no proof that the price paid for the land was less than its actual value. Appellant admits that the cash payment and the personal property were, with her knowledge, spent for the benefit of the family. Indeed, the only fraud relied upon is the fact that the deed was made to appellee's father instead of to appellee. The rights of no creditors being involved the purchaser of land may have the deed made to anyone he pleases. In the absence of other circumstances tending to show fraud, the mere fact that the

grantor executes and acknowledges a deed to the purchaser's father, though he believes the purchaser is the grantee therein, will not amount to a fraud upon the grantor, where the grantor receives the benefit of the full purchase price.

Judgment affirmed.