## TUGGLES v. CALLISON, *Appellant*.

### Division One, April 1, 1898.

1. **Oral Agreement:** SUBSEQUENT WRITTEN CONTRACT. An oral agreement, inconsistent with a subsequent written agreement, pertaining to the same matters, is superseded by the latter, and the rights of the parties will be measured by the written contract.

2. Purchase at Trustee's Sale: CONFIDENTIAL RELATION. While it is true that one will not be permitted to purchase and hold property as his, where he has a duty to perform in relation thereto inconsistent with his position as a purchaser on his own account, yet, where the purchaser bought land at a trustee's sale under a *third* deed of trust, he will not be estopped from claiming he is the owner simply because he, as a holder of the note secured by a *second* deed of trust, agreed with the mortgagor that the property would not be sold under *his* deed of trust within one year.

*Appeal from Livingston Circuit Court.*—HON. E. J. BROADDUS, Judge.

AFFIRMED.

*J. M. Davis & Sons* and *C. A. Loomis* for appellant.

(1) The relation of banker and customer, and of mortgagor and a mortgagee, and trustees, agents, administrators, guardians, attorneys and others whose connection with any person is such as to establish a confidential relation between them concerning his property, and give them special knowledge and opportunity regarding it, creates a confidential relation between the parties. *Kirchner v. Kirchner*, 113 Mo. 290; *Street v. Goss*, 62 Mo. 226; *Gavin v. Williams*, 44 Mo. 646; *Cadwalader v. West*, 48 Mo. 483; *Thurston v. Irwin*, 43 Mo. 153; Story's Eq. Jur. [4 Ed.], secs. 309–315; *King v. Remington*, 29 N. W. Rep. 352; Bigelow on Frauds, p. 259; *Vila v. Rodrignez*, 12 Wall. (U. S) 339; *Wakeman v. Hazleton*, 3 Barb. Ch. 148. (2) Any dealings between the parties occupying a confidential relation cast the burden on the party buying the property to show that he paid full value, that he took no advantage of his position, that he acted in the utmost good faith, and that he carried out

his agreement to the satisfaction of a court of equity, dealing with the trust property. Story's Eq. Jur. [4 Ed.], secs. 315 and 316a; 2 Pomroy's Eq., secs. 956–959; *Keith v. Kellam*, 35 Fed. Rep. 243; *Street v. Goss*, 62 Mo. 226; *King v. Remington*, 29 N. W. Rep. 352; *Saunders v. Richards*, 16 So. Rep. 679. (3) A party will not be permitted to purchase property and hold it as his own when he has a duty to perform in relation thereto, which is inconsistent with his character as a purchaser on his own account. *King v. Remington*, 29 N. W. Rep. 365; *Thurston v. Irwin*, 42 Mo. 153; *Columbus Co. v. Hurford*, 1 Neb. 146; *Stettuesche v. Lamb*, 26 N. W. Rep. 374; *Lytle v. Beveridge*, 58 N. Y. 592; *Torrey v. Bank*, 9 Paige, 649; *Bridenbecker v. Lowell*, 32 Barb. 9; *Dobson v. Raney*, 3 Sandf. Ch. 60; *Moore v. Moore*, 1 Seld. 256; *Grumley v. Webb*, 44 Mo. 444; *State v. McKay*, 43 Mo. 594; *Davon v. Fanning*, 2 Johns. Ch. 252. (4) The relation of confidence existing between all parties, a special trust is reposed in the other party and will avoid a deed even if property is purchased at public sale and at a fair price. *Thurston v. Irwin*, 43 Mo. 153; *Jewett v. Miller*, 10 N. Y. 402; *Michoud v. Girod*, 4 How. (U. S.) 554; *Van Epp v. Van Epp*, 9 Paige, 237. (5) The purchase of property even at public sale by any party occupying a trust relation or a confidential relation will make the party buying, a trustee for the other party, and he has a right to redeem. *Jamison v. Glascock*, 29 Mo. 191; *Davon v. Fanning*, 2 Johns. Ch. 251; *State v. McKay*, 29 Mo. 594. (6) The plaintiff having purchased R. C. Williams's interest in the property was subrogated to Williams's rights, and was bound to carry out Williams's contract, and having a full knowledge of Williams's relation to the respondent took the property subject to that contract and the

rights of the respondent to redeem.  (7)  A trustee or one occupying a confidential relation buying property even at public sale and for a fair price, holds it subject to the right of redemption by the other party, without regard to his innocence.  The purchase becomes of a poisonous character, and in consequence the *cestui que trust* is not bound to prove, nor is the court bound to find that the trustee has made a bargain advantageous to himself, it is to guard against this uncertainty and hazard of abuse and to remove the trustee from temptation that the court does and will permit the *cestui que trust* to come at his own option and without showing actual injury, and insist upon having the experiment of another sale.  *Thurston v. Irwin*, 43 Mo. 153; *Grumley v. Webb*, 44 Mo. 444; *Davon v. Fanning*, 2 Johns. Ch. 251.

*Johnson & Waite* and *Alexander, Richardson & Allen* for respondent.

(1)  An ordinary conveyance, under our statute, is a feoffment as well as a bargain and sale and a pecuniary consideration is not essential to its validity. *Poe v. Domic*, 48 Mo. 443.  And an equitable estate will pass, also, without a consideration expressed or proved. 5 Am. and Eng. Ency. of Law, p. 435, sec. 11. (2)  The absence of consideration in fact is not sufficient without fraud or mistake to raise a resulting trust in favor of grantor who has conveyed by a fee simple deed reciting a valuable consideration.  Hence a voluntary deed purporting to be for benefit and use of grantee, and made deliberately and without mistake or contrivance, is binding upon the grantor and his heirs, and can be avoided only by creditors and others having superior equities to the grantee.  *Jackson v. Cleveland*, 15 Mich. 94; *Henderson v. Henderson's Adm'r*,

13 Mo. 151; *Hollicher v. Hollicher*, 62 Mo. 267; *Wood v. Bradley*, 76 Mo. 25; *Bob v. Bob*, 89 Mo. 412; *Lambert v. Estes*, 99 Mo. 605; *Weiss v. Heitkamp*, 127 Mo. 23; *Poe v. Domic*, 48 Mo. 443.   (3)  One who executed a deed to defraud creditors is estopped as to his grantee, and the latter may maintain ejectment. *Peterson v. Brown*, 17 Nev. 172; *George v. Williams*, 26 Mo. 190; *Stephenson v. Edwards*, 98 Mo. 622.   (4)  In the absence of fraud a subsequent written contract supersedes a prior verbal one concerning the same subject-matter. *Hagar v. Hagar*, 71 Mo. 610; *Christman v. Hodges*, 75 Mo. 413.   (5)  Even if the plaintiff had entered into the agreement with the defendant on the twenty-third of February as claimed by defendant, he had no authority to bind the bank. *Sav. Ass'n v. Saylor*, 63 Mo. 224; *Chew v. Ellingwood*, 86 Mo. 272; Story on Agency, secs. 114, 115; *U. S. v. Davis*, 8 Pet. 12; *Bank v. Hart*, 55 N. W. Rep. 631; *Bank v. Haskell*, 51 N. H. 116.

WILLIAMS, J.—This is an action of ejectment for one thousand three hundred and eighty-one acres of land.   The petition contains the usual averments. The answer sets up an equitable defense, the nature of which will appear from the facts hereinafter stated.

Defendant, in February, 1893, was the owner of the land sued for, but, prior to that time he had given three deeds of trust upon it.   The first, dated August 1, 1888, was to secure a note for $6,000 payable to Gilbert & Gay; the second, dated July 27, 1892, was for a note of $2,500 to the Farmers Exchange Bank; and the third, September 23, 1892, for one of $1,760, to the Union Bank of Trenton.   Defendant was also heavily indebted to other parties.   He was a customer of the Daviess County Savings Association, of which plaintiff was president, and had borrowed money from it, from

time to time, until his indebtedness to said association then due amounted to about $5,600. Plaintiff represented said bank in all of its dealings with defendant and they were upon terms of intimate friendship. A sale of the land under one or more of said deeds of trust above mentioned was about to be made. Plaintiff, as representative of the Daviess County Savings Association, and the defendant were anxious to prevent such sales. Plaintiff was not satisfied that the security held by his bank was sufficient. The debt due it of $5,600 was secured by a chattel mortgage upon some cattle, which defendant was feeding. It was believed by both plaintiff and defendant that it would not be advisable to sell the cattle at that time. It was thought by them that if said cattle should be kept upon the land a while longer, a larger sum could be realized for them. The parties believed that if the cattle were sold in February, 1893, in the condition in which they then were, they would not bring enough to pay the debt due plaintiff's bank. They were also desirous of preventing a sale of the land.

Defendant claims, and so alleges in his answer, that on or about the twenty-third of February, 1893, plaintiff agreed that his bank would take up the Union Bank debt and the note of the Farmers Exchange bank, and would advance the instalment of interest due at that time upon the Gilbert & Gay note, and would stop the sale of the land, and would "hold the defendant harmless against said deeds of trust until such time as the lands could be sold for their substantial value, or a new loan negotiated sufficient to pay off and discharge said deeds of trust; and advance from time to time a sum not exceeding $2,000, should it be needed, to mature said cattle for market and complete certain improvements upon said real estate." Defendant asserts that, in consideration of this undertaking upon

the part of plaintiff's bank, the defendant promised to give said bank a fourth deed of trust upon the land in controversy, and a chattel mortgage upon ten head of work horses to secure said $2,000, to be advanced, and also as additional security for the old indebtedness, and that he also agreed to move with his family upon the land and to give his personal attention to improving it and caring for said cattle.   The arrangement made at this time was verbal and the parties differ as to its terms.   Defendant did, on March 1, 1893, execute a deed of trust upon the land and a chattel mortgage upon the ten work animals to secure the old indebtedness due plaintiff's bank and a note for $2,000, which, it is conceded was given to cover advances to be thereafter made.   Plaintiff's version is that this was done because sixty-six head of cattle, included in the original chattel mortgage held by his bank, were missing and were not accounted for, and that this additional security was demanded on that account, and he denies the agreement mentioned above.   The Daviess County Savings Association did not, at any rate, take up the notes secured by the second and third deeds of trust. Defendant and plaintiff afterward, jointly, made several unsuccessful efforts to induce other creditors of defendant to make some arrangement to purchase said notes and to carry the debts without a sale.

Finally defendant's father-in-law, Mr. R. C. Williams, agreed to assist in the matter.   A written contract was, on the twenty-second of March, 1893, entered into and signed by the Daviess County Savings Association (acting through plaintiff, its president), and by Mr. R. C. Williams and defendant.   This contract provided that said bank should purchase and have assigned to it the note to the Farmers Exchange Bank secured by the second deed of trust and should carry it, without foreclosure, for twelve months.   This deed

of trust had not been signed by defendant's wife, and the contract stipulated that plaintiff's bank should not be required to take up said note until she should execute and acknowledge said deed of trust. It was further agreed that the bank should hold said note for twelve months, as above stated, unless it should be sooner paid by Williams or defendant. Said bank was also to advance, from time to time, as needed to pay for labor in raising the crops during that year, sums not exceeding in the aggregate $800 and was to have a lien upon the crop for such advances, etc. Mr. Williams agreed, upon his part, to purchase and have assigned to him the the Union Bank debt secured by the third deed of trust. Defendant was to move upon the land with his family within thirty days from the date of the contract, and give his personal attention to the farm and stock.

Defendant and his wife, at the time of making the above contract, executed a quitclaim deed to Mr. R. C. Williams for the land. The consideration recited in this deed is $1. It was made by defendant of his own motion. He says that he did it because he thought Williams would be better satisfied to have the deed and he made it on that account. Plaintiff claims that the incentive to defendant to execute this conveyance was the fact that judgments for large amounts were about to be rendered against the latter, and he desired for that reason to make the transfer. Mr. Williams testified that he accepted the deed with the understanding that it was intended as an unconditional conveyance of the land to him.

Defendant alleges that he fully performed said contract above stated upon his part and moved upon the land and made improvements thereon. Afterward defendant's wife signed the deed of trust, securing the debt of the Farmers Exchange Bank, and acknowl-

edged it before Mr. Williams who was a notary public. It was presented to plaintiff for his bank to take up the note in accordance with the terms of the written contract above referred to.   He objected to the acknowledgment on the ground that the party who took it was interested in the land, and he preferred to have it acknowledged before another officer.   Mr. Williams agreed to this, but it was several weeks before it was convenient for the wife to acknowledge it again.   The holder of the note in the meantime notified Williams that the matter must be attended to at once or the land would be sold.   *He* then took up the note with *his own* funds.   Plaintiff claimed that in doing so Williams exercised the right given him under the written contract to pay off said debt but Mr. Williams says he did not understand it that way.

Defendant's father-in-law, Mr. Williams, caused the land to be advertised for sale under the *third* deed of trust, and it was sold by the trustee November 4, 1893, and at that sale plaintiff purchased and received a deed from the trustee.   Afterward Mr. Williams on the eighteenth of December, 1893, assigned to plaintiff the debt secured by the second deed of trust, and which he had purchased from the Farmers Exchange Bank, and at the same time executed and delivered to plaintiff a quitclaim deed for the land.   Plaintiff's purchase was, of course, subject to the Gilbert & Gay deed of trust for $6,000.   The plaintiff and defendant had some negotiations about renting the land by the latter.   Defendant at first seemed willing to the arrangement and according to plaintiff's testimony it was understood that he would do so.   He did not at any rate when first spoken to about the matter set up any interest adverse to plaintiff.   Subsequently he declined to make any agreement to rent and this suit was brought.   Defendant asserts that by reason of the con-

tracts and transactions mentioned above, plaintiff occupied such a position that he could not as against defendant buy the land for himself, and that defendant is entitled to redeem, and the answer asks for an accounting and for permission to redeem. The circuit court decided the issues for plaintiff, and entered judgment for possession of the land, damages, rents and profits in his favor. The defendant has appealed.

1. The written contract of March 22, 1893, covered the same matters, which defendant claims were included in the disputed verbal agreement of a prior date. If there was an undertaking that the plaintiff's bank should purchase and carry the note secured by the third deed of trust, this was certainly superseded by the subsequent agreement, signed by both plaintiff and defendant, wherein it was agreed that Williams should cause *that debt* to be assigned to *him*. Both agreements pertained to the same subject and purported to regulate the same matters. The last was inconsistent with the first. The later written contract must be held to supersede the prior oral one, and the rights of the parties must be measured by the requirements of the written agreement. *Hagar v. Hagar*, 71 Mo. 610; *Chrisman v. Hodges*, 75 Mo. 413.

2. It is true, as appellant contends, that no one will be permitted to purchase and hold property as his own, where he has a duty to perform in relation thereto inconsistent with his position as a purchaser on his own account, and so the cases all hold. Without, however, now considering the purpose and effect of the quitclaim deed executed by defendant to Williams, and the deed from the latter to plaintiff, there was nothing to prevent plaintiff from purchasing at the trustee's sale made under the third deed of trust to secure the note to the Union Bank of Trenton.

The written contract made no provision for postponing the foreclosure of *that* deed of trust. Defendant's father-in-law, who, under the agreement, was to purchase said debt, evidently intended to *exclude* from said agreement any such provision. The very fact that there was a stipulation that a sale should not be made under the *second* deed for twelve months and that the contract contained no provision for delaying a sale under the *third*, makes it plain that Williams in purchasing said note did not intend to bind himself to carry *that* debt longer than it suited him to do so. If defendant's father-in-law had the right to cause the trustee to sell when he did, then there was no reason *on account of the time* of the sale to prevent plaintiff from purchasing. It will be seen that neither the plaintiff nor his bank was obligated by the contract to prevent this sale, or to cause it to be deferred, or to purchase the land for defendant. *Wilson v. Vanslone*, 42 Mo. 315; Jones on Mortgages [2 Ed.], sec. 711; *Ten Eyck v. Craig*, 62 N. Y. 406.

The holder of the debt had the right to direct the trustee to make the sale. There was nothing in the contract to prevent it. There was nothing in plaintiff's relations to defendant, nor any duty he owed defendant, which would prevent him from purchasing at said sale.

Then, too, if we look to the quitclaim deed executed by defendant to his father-in-law, Williams, it will be seen that the testimony of the latter is to the effect that it was intended as an unconditional conveyance, and such seems to have been the understanding of the parties. Williams transferred the title so acquired by him to plaintiff.

The circuit court entered judgment for plaintiff and this judgment is affirmed. All concur.